440 A.2d 545

**COMMONWEALTH of Pennsylvania,**

v.

**Vivian NICHELSON a/k/a William Hill, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 6, 1981.

Filed Jan. 19, 1982.

Petition for Allowance of Appeal Denied June 9, 1982.

Joseph J. Dougherty, West Chester, for appellant.

James P. MacElree, Assistant District Attorney, West Chester, for appellee.

Before WICKERSHAM, McEWEN and POPOVICH, JJ.

WICKERSHAM, Judge:

On or about October 2, 1980, Vivian Nichelson, the appellant, and Michael Marrero, co-defendant, were charged in Philadelphia County with kidnapping, unlawful restraint,

unlawful use of credit cards, aggravated assault, simple assault, theft, receiving stolen property, criminal conspiracy (for kidnapping, robbery, aggravated assault, forgery and murder), forgery, robbery and criminal attempt homicide, prohibitive offensive weapons, violation of the Uniform Firearms Act and terroristic threats.

On or about October 21, 1980, the appellant and co-defendant were charged in Chester County with criminal attempt homicide, aggravated assault, robbery, theft, receiving stolen property, violation of the Uniform Firearms Act, possession of instruments of crime, and criminal conspiracy to commit all of the above Chester County charges.

The incident in question allegedly occurred on September 11, 1980, when Edward McCarren was exiting his 1975 Cadillac in Philadelphia. He was approached by Marrero who produced a handgun and ordered Mr. McCarren to get back in his car. Shortly thereafter Nichelson entered the vehicle and drove out of Philadelphia to the Fort Washington interchange of the Pennsylvania Turnpike headed West. After the car was on the turnpike Marrero ordered the victim to place his wallet and personal belongings in a paper bag, which the victim did. At a point in Chester County, the car stopped and the victim was bound and gagged and placed in the woods. After a period of twenty minutes, the victim was approached by Marrero who produced a gun and shot the victim in the head. Marrero and Nichelson then took the victim's car and returned to Philadelphia where they used a Sears credit card to obtain shoes and attempted to obtain jewelry, at which point Marrero was apprehended and within fifteen days Nichelson was also apprehended.

On February 17, 1981, trial commenced in Philadelphia. The jury returned guilty verdicts to all of the Philadelphia charges except possession of firearms without a license and unlawful use of credit cards on which the jury deadlocked.

On July 3, 1981, a Motion to Quash the Criminal Informations in Chester County was filed and, on July 28, 1981, oral argument and briefs were presented to the Honorable Leon-

ard Sugerman. On September 10, 1981, Judge Sugerman entered an order denying appellant's request as to all informations except criminal attempt homicide and criminal conspiracy.

On or about September 25, 1981, a timely notice of appeal to this court was filed contesting the order of Judge Sugerman.[1]

Appellant first contends that the Chester County prosecution is barred by virtue of the former prosecution in Philadelphia County. There is no merit to this contention.

§ 110. When Prosecution Barred by Former Prosecution for Different Offense.

Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:

(1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for same offense) and the subsequent prosecution is for:

(i) any offense of which the defendant could have been convicted on the first prosecution;

---

1. Vivian Nichelson is represented on this appeal by Joseph J. Dougherty, Esquire. Three questions are presented for our consideration:

I. Did the trial court err in denying appellant's motion to quash the information as violative of section 110 of the Pennsylvania Crimes Code?

II. Did the trial court err in denying appellant's motion to quash the information as violative of the double jeopardy clauses of the United States and Pennsylvania constitutions?

III. Did the trial court err in denying appellant's motion to quash the informations due to the application of the principal of collateral estoppel?

Appellant summarizes his argument thereon as follows:

The trial court erred to the prejudice of the appellant in not granting the requested Motion to Quash the Information. Such a ruling was in error because Section 110 of the Pennsylvania Crimes Code necessitate such a dismissal, the double jeopardy clauses of the United States and Pennsylvania Constitutions also required a dismissal, and the principal of collateral estoppel as applied to the case necessitated the granting of the motion. Therefore, the ruling of the trial court should be reversed and the appellant discharged.

Brief for Appellant at 6, 10.

(ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and was within the jurisdiction of a single court unless the court ordered a separate trial of the charge of such offense; or

(iii) the same conduct, unless:

(a) the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil; or

(b) the second offense was not consummated when the former trial began.

. . . .

18 Pa.C.S. § 110.

The simple answer to the contention of appellant is found in *Commonwealth v. Harris*, 275 Pa.Super. 18, 418 A.2d 589 (1980), where we said:

Appellant cites 18 Pa.C.S.A., Section 110, as authority for his argument that the charges of terroristic threats should have been quashed because of the earlier convictions in Philadelphia County arising from this episode. He argues that the prosecution for terroristic threats should have been barred in Montgomery County even though the prosecution in Philadelphia was for different offenses because, the argument runs, he could have been convicted of terroristic threats in the Philadelphia prosecution. He argues that the prosecution for terroristic threats in Montgomery County places him in double jeopardy and that the burden was on the Commonwealth to prosecute for all offenses arising from one criminal episode at the first prosecution.

The terroristic threats for which appellant was convicted at his second trial all occurred in Montgomery County at the time Mrs. Hutchinson was forcibly pulled from

appellant's car into a nearby woods and threatened repeatedly with death, while appellant attempted to shoot her and then raped and stabbed her.

He was not charged with making terroristic threats in Philadelphia County and there is no evidence in this record that he made such threats in that county; but if he did, they were not the threats for which he was tried in Montgomery County.

The mandate of Section 110 of the Criminal Code that there cannot be a subsequent prosecution for any offense for which a defendant could have been convicted on the first prosecution carries the statutory qualification that the offenses must have been 'within the jurisdiction of a single court.' The Court of Common Pleas of Philadelphia County had no jurisdiction to try the appellant on the charge of making terroristic threats in Montgomery County: *Commonwealth v. Simeone*, 222 Pa.Super. 376, 294 A.2d 921 (1972); *Commonwealth v. Mull*, 316 Pa. 424, 426, 175 A. 418 (1934).

*Id.*, 275 Pa.Super. at 23–24, 418 A.2d at 592.

■ Instantly, the victim was abducted at gunpoint from his Philadelphia residence, forced into the backseat of his car and driven into Chester County where he was bound, gagged, and abandoned. Some time thereafter, the defendants returned to the location of the victim, discussed killing him and thereafter the co-defendant Marrero shot the victim in the head. Miraculously, the seventy-five year old victim survived. In the initial Philadelphia trial, the defendant was tried for criminal conspiracy, robbery, theft by unlawful taking, kidnapping, receiving stolen property, recklessly endangering, terroristic threats, simple assault, carrying firearms on a public street, and credit cards. Convictions resulted in all but receiving stolen property, credit cards, and the firearms offense. Thus, as in *Harris*, the present defendant, previously convicted of criminal conspiracy, is charged with related acts, aggravated assault and robbery, which occurred solely in a different jurisdiction. As the court in *Harris* directed, regardless of the relationship of the offenses, the application of § 110 requires that the offense must have

been within the jurisdiction of a single court. Here, such was not the case and the charges were properly brought in the county having jurisdiction over the respective offenses.

■ The second contention of appellant raises a double jeopardy question. The appellant argues that the double jeopardy guarantee:

'. . . has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense. . . .' *North Carolina v. Pearce,* 395 U.S. 711, 23 L.Ed.2d 656, 89 S.Ct. 2072 [23 L.Ed.2d 656] (1969).

. . . .

The occurrence here was a single course of conduct. The mere fact that appellant stepped over the county line (as alleged) does not make this matter two [occurrences].

Brief for Appellant at 14.

Again, the answer to appellant's contention is that the instant Chester County prosecution involves acts entirely separate and distinct from the offenses previously adjudicated in Philadelphia County and, therefore, is not barred by double jeopardy considerations. In *Commonwealth v. Simeone,* 222 Pa.Super. 376, 294 A.2d 921 (1972), we said:

One of the opinions delivered in *Simmons v. Commonwealth,* 5 Binney 617, 628–629 (1813) (Brackenridge, J., dissenting on other grounds) contains the earliest appellate recognition of this rule in Pennsylvania and provides an informative view of its historic foundation:

'One county is as distinct from another, as one country from another, in respect of the right of jurisdiction. Personal actions follow the person, and there is a fiction of the contract being in the county where the person is . . . And there is no fiction in a criminal case so as to give jurisdiction. . . . By the ancient law, 'all offenses were said to be done against the peace of the county; *contra pacem vice comitis,*' 1 Black. 117. And though

*Alfred*, to keep within the bounds of the universal or common law, gave the control to the king's own courts, in consequence of which offences were laid to be *contra pacem domini regis*, yet it still remained a principle, 'that the trial of all causes civil and criminal must be in the very district where the cause of complaint arose,' 4 Black 411. Fiction in civil cases . . . has dispensed with this as to actions purely personal, but in criminal *never.*'

*Id.*, 222 Pa.Super. at 378, 294 A.2d at 922.

In a concurring opinion, Judge Hoffman said:

It is clear that where a defendant is tried for an offense *by a court of competent jurisdiction*, a second trial for the same offense would be a violation of the fifth amendment guarantee against double jeopardy, which has recently been held applicable to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

The questions then before this Court are (1) whether appellant was tried twice for the same offense, and (2) if so, whether he was tried by a court of competent jurisdiction in the first trial.

"Offenses are not the same 'for purposes of the double jeopardy' clause of the 5th Amendment unless the evidence required to support conviction on one of the indictments would have been sufficient to warrant conviction on the other."

. . . Jurisdiction in Pennsylvania, however, is only countywide, . . . Therefore, the evidence that would have sustained a conviction in Philadelphia County would not have been sufficient to prove that appellant had received stolen goods in Bucks County. The offenses for which appellant was tried in Bucks County are entirely separate and distinct from the offenses for which appellant was tried in Philadelphia.

*Id.*, 222 Pa.Super. at 282–3, 294 A.2d at 923–925.

We have reviewed the third and final contention relating to the suggested applicability of the principle of collateral estoppel. This contention is meritless.

Order of the lower court is affirmed and the case remanded for trial with jurisdiction of this court relinquished.