658 A.2d 755

COMMONWEALTH of Pennsylvania, Appellee,

v.

Mark BRACALIELLY, Appellant.

COMMONWEALTH of Pennsylvania, Appellee,

v.

Raymond STARR, Appellant.

Supreme Court of Pennsylvania.

Argued and submitted Sept. 21, 1994.

Decided May 16, 1995.

Reconsideration Denied July 19, 1995.

Paul D. Boas, Mark D. Lancaster, Berlin, Boas & Isaacson, Pittsburgh, for appellant in No. 74.

Lynn Erickson, Leesport, for appellant in No. 13.

David M. McGlaughlin, Newman & McGlaughlin, Philadelphia, for amicus curiae Pennsylvania Ass'n of Crim. Defense Lawyers in No. 13.

Robert E. Colville, Dist. Atty., Claire C. Capristo, Deputy Dist. Atty., Kemal A. Mericli, Kevin F. McCarthy, Asst. Dist. Atty., for appellee in No. 74.

Claude A. Lord Shields, Dist. Atty., Jacqueline L. Russell, Asst. Dist. Atty., for appellee in No. 13.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

MONTEMURO, Justice.

This consolidated appeal requires us to determine whether we should bar the instant prosecutions. Appellants contend that because these prosecutions arise from conduct which forms part of the same criminal episode on which previous prosecutions were based, 18 Pa.C.S. § 110 requires their dismissal. The Commonwealth argues that the instant prosecutions are not based on conduct constituting the same criminal episode as the previous prosecutions and therefore do not violate 18 Pa.C.S. § 110. Because the inquiry as to whether a series of criminal acts constitutes a single criminal episode is fact dependent, we first review the factual history of each case.

### Commonwealth v. Bracalielly

This case involves various drug related offenses which occurred over the period from August 7 to August 20, 1990. During this period, Mark Bracalielly ("Bracalielly") allegedly participated in four transactions involving controlled substances. Two of these transactions occurred in Allegheny County and two occurred in Butler County. Furthermore, on August 20, 1990, the police obtained a warrant, and, upon

searching Bracalielly's Allegheny County residence, discovered various controlled substances and drug paraphernalia.

On August 4, 1990, Detective Byers, a member of the North Hills Drug Task Force, was contacted by Michael Deardon, a confidential informant who had been reliable in the past, concerning the possibility of investigating Bracalielly. At this time, Bracalielly resided at 213 Henderson Street in the North Side area of Pittsburgh. Deardon had arranged to buy one eighth of an ounce of cocaine from Bracalielly at the McKnight Seibert Shopping Center in Ross Township. Affidavit For Criminal Complaint of Dets. Byers & Herb, 9/20/90 (violation date 8/7/90).

### August 7, 1990—Allegheny County

On August 7, 1990, Deardon met with Bracalielly at Maggie Mae's in the McKnight Seibert Shopping Center. Several detectives maintained surveillance inside and outside the restaurant. Deardon and Bracalielly exited the restaurant and proceeded to a grey Chevrolet Cavalier, where Deardon purchased 3.32 grams of cocaine from Bracalielly for $250. *Id.* Deardon then made arrangements to purchase one ounce of cocaine in the near future. *Id.*

Based on this transaction, the Commonwealth charged Bracalielly with one count each of possession of a controlled substance,[1] possession with intent to deliver a controlled substance,[2] delivery of a controlled substance,[3] and criminal conspiracy.[4] Allegheny County Criminal Action No. 9016136.

### August 11, 1990—Butler County[5]

Butler County authorities began an independent investigation of Bracalielly, using the same informant. During the next

1. 35 Pa.S. § 780–113(a)(16).

2. 35 Pa.S. § 780–113(a)(30).

3. 35 Pa.S. § 780–113(a)(30).

4. 18 Pa.C.S. § 903(a)(1).

5. The facts concerning the Butler County transaction are derived from the notes of testimony dated August 29, 1991, taken in the Court of Common Pleas of Allegheny County; the Notes of Testimony dated June

four days, Deardon contacted Bracalielly constantly to arrange another transaction. (N.T. 8/29/91 at 15). On August 11, Bracalielly met Deardon in Allegheny County and they traveled to the Cranberry Mall in Cranberry Township (Butler County) where Bracalielly sold additional drugs to Deardon in the parking lot in the presence of a Cranberry Township law enforcement officer. (N.T. 8/29/91 at 7–8). *See also* (N.T. 6/12/91 at 13–18) (attached as Exhibit B to Defendant's Memorandum in Support of Motion to Quash); (N.T. 8/29/91 at 7–8). Butler County authorities subsequently charged Bracalielly with possession of a controlled substance,[6] delivery of a controlled substance,[7] and conspiracy.[8] Butler County Criminal Action No. A1054 of 1990.

### *August 17, 1990—Allegheny County*

On August 16, 1190, Deardon once again contacted Bracalielly at his home in Allegheny County. This time arrangements were made for Deardon to purchase one ounce of cocaine for $1,550. Affidavit For Criminal Complaint of Dets. Byers & Herb, 9/20/90 (violation date 8/17/90). The transaction occurred in the early morning hours of August 17, 1990, in Ross Township, Allegheny County. *Id.* Detective Byers accompanied Deardon while other officers maintained surveillance. *Id.* After the transaction, Deardon surrendered the cocaine to Detective Byers. Lab tests subsequently revealed the presence of 28.55 grams of cocaine. *Id.*

The Commonwealth once again charged Bracalielly with one count each of possession of a controlled substance,[9] possession with intent to deliver a controlled substance,[10] delivery of a

12, 1991, taken in the Court of Common Pleas of Butler County; and Butler County Criminal Action Nos. A1054 and B1055 of 1990, attached as exhibits to Bracalielly's Memorandum in Support of Motion to Quash.

**6.** 35 Pa.S. § 780–113(a)(16).

**7.** 35 Pa.S. § 780–113(a)(30).

**8.** 18 Pa.C.S. § 903(a).

**9.** 35 Pa.S. § 780–113(a)(16).

**10.** 35 Pa.S. § 780–113(a)(30).

controlled substance,[11] and criminal conspiracy.[12] Allegheny County Criminal Action No. 9016135.

### August 20, 1990—Butler County

On August 20, 1990, Deardon again contacted Bracalielly at his Allegheny County home to set up a "reverse sting."[13] (N.T. 8/29/91 at 10). Bracalielly met Deardon in Allegheny County and drove him to the Cranberry Mall in Butler County. *Id.* at 19. At the Cranberry Mall, Bracalielly was arrested after attempting to purchase one quarter pound of cocaine for $4,000 from Detective Evanson of the Cranberry Township Police. Bureau of Narcotics Investigations and Drug Control Memorandum Report, attached as Exhibit J to Defendant's Memorandum in Support of Motion to Quash. The Commonwealth charged Bracalielly with possession of a controlled substance,[14] possession with intent to deliver a controlled substance,[15] criminal conspiracy,[16] possession of an instrument of a crime,[17] and possession of an offensive weapon.[18] Butler County Criminal Action No. B1055 of 1990, attached as Exhibit E to Defendant's Memorandum in Support of Motion to Quash.

### August 20, 1990—Allegheny County

After his arrest, Bracalielly provided statements divulging the presence of thirty-two grams of cocaine and a quantity of L.S.D. at his Allegheny County home. Affidavit of Barbara Roberts, attached as Exhibit G to Defendant's Memorandum in Support of Motion to Quash. Based on this information and corroborating statements by Deardon, a search warrant was

11. 35 Pa.S. § 780–113(a)(30).

12. 18 Pa.C.S. § 903(a)(1).

13. In this "reverse sting" operation, Bracalielly was to be the buyer rather than the seller.

14. 35 Pa.S. § 780–113(a)(16).

15. 35 Pa.S. § 780–113(a)(30).

16. 18 Pa.C.S. § 903(a)(1).

17. 18 Pa.C.S. § 907(a).

18. 18 Pa.C.S. § 908.

issued for 213 Henderson Street in Pittsburgh. Authorities discovered 31.1 grams of cocaine, 197 dosage units of L.S.D., 0.8 grams of marijuana, and various drug paraphernalia. Affidavit of Barbara A. Roberts in Support of CC 9100984 (11/19/90). Bracalielly was charged in Allegheny County with two counts of possession of a controlled substance,[19] two counts of possession with intent to deliver a controlled substance,[20] and one count each of criminal conspiracy,[21] possession or distribution of a small amount of a controlled substance,[22] and possession of drug paraphernalia.[23] Allegheny County Criminal Action No. 9100984.

## Procedural History

Bracalielly was charged in Butler County for the crimes that occurred there on August 11, 1990, and August 20, 1990. On June 13, 1991, Bracalielly entered pleas to the charges contained in the Butler County criminal actions. (N.T. 8/29/91 at 14).

On August 14, 1991, Bracalielly filed an omnibus pretrial motion in Allegheny County contending that his convictions in Butler County were for offenses arising out of the same criminal conduct as the Allegheny County charges and therefore, the Allegheny County charges were barred by 18 Pa.C.S. § 110. Defendant's Omnibus Pre–Trial Motion at 3–4. After hearing and argument, the trial court denied Bracalielly's motion to quash the charges stemming from the August 7 and August 17 incidents, but did quash the charges arising from the search of Bracalielly's residence on August 20.

Bracalielly appealed and the Commonwealth cross-appealed. The Superior Court reversed the trial court order quashing the charges resulting from the search of Bracalielly's residence on August 20, and affirmed the trial court's denial of

19. 35 Pa.S. § 780–113(a)(16).
20. 35 Pa.S. § 780–113(a)(30).
21. 18 Pa.C.S. § 903(a)(1).
22. 35 Pa.S. § 780–113(a)(31).
23. 35 Pa.S. § 780–113(a)(32).

Bracalielly's motion to quash the August 7 and August 17 charges. Bracalielly now contends that the Superior Court erred and we should reverse.

## Commonwealth v. Starr

On June 22, 1990, Raymond Starr ("Starr") was arrested under two separate criminal complaints alleging the same violations of the Controlled Substance, Drug, Device, and Cosmetic Act. 35 Pa.S. §§ 780 to 960. The first complaint alleged that on January 24, 1989, Starr sold 25 grams of marijuana for $175 to an undercover State Narcotics Agent. Starr was charged with possession of a controlled substance,[24] possession with intent to deliver a controlled substance,[25] and delivery of a controlled substance.[26] Schuylkill County Criminal Action No. 553 of 1989. The second complaint alleged that on February 8, 1989, Starr once again sold marijuana to an undercover State Narcotics Agent. This time Starr sold 26.7 grams for $180. The Commonwealth charged Starr with the same three offenses. Schuylkill County Criminal Action No. 551 of 1989.

On January 5, 1990, Starr was found not guilty of the charges resulting from the February 8, 1989, incident. On February 23, 1990, Starr filed a Motion to Dismiss the charges arising from the incident on January 24, 1989. Starr argued that both transactions were part of the same criminal episode and therefore, 18 Pa.C.S. § 110 barred prosecution of the January 24 charges. The trial court denied the motion and the Superior Court affirmed.

## 18 Pa.C.S. § 110

■ Before addressing the merits of these cases, we must determine whether these appeals are properly before this Court. The orders denying both Bracalielly's and Starr's

24. 35 Pa.S. § 780–113(a)(16).
25. 35 Pa.S. § 780–113(a)(30).
26. 35 Pa.S. § 780–113(a)(30).

motions to quash are not final orders.[27]   However, because 18 Pa.C.S. § 110 statutorily extends Federal and Pennsylvania constitutional protections against double jeopardy and embodies the same basic purposes as those underlying the double jeopardy clauses, the interlocutory appealability of double jeopardy claims has been applied to claims based on Section 110.  *Commonwealth v. Dozier,* 333 Pa.Super. 188, 191, 482 A.2d 236, 238 (1984).  *See also Commonwealth v. Fields,* 491 Pa. 609, 610 n. 1, 421 A.2d 1051, 1052 n. 1 (1980) (denial of defendant's pretrial motion to dismiss an indictment on double jeopardy grounds is final and directly appealable).  Therefore, we may properly consider this appeal.

The relevant portions of 18 Pa.C.S. § 110 state:

§ 110.  **When prosecution barred by former prosecution for different offense**

Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:

(1) The former prosecution resulted in an acquittal or in a conviction as defined in Section 109 of this title (relating to when prosecution barred by former prosecution for same offense) and the subsequent prosecution is for:

\*     \*     \*     \*     \*     \*

(ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and was within the jurisdiction of a single court unless the court ordered a separate trial of the charge of such offense;

\*     \*     \*     \*     \*     \*

**27.** There is no doubt that the portion of trial court order in *Commonwealth v. Bracalielly* dismissing the charges contained in Allegheny County Criminal Action No. 9100984 is a final order.  It terminated the Commonwealth's prosecution of those charges and is therefore properly before us. *Commonwealth v. Dugger,* 506 Pa. 537, 545, 486 A.2d 382, 385 (1985) (element of finality inherent in a suppression order is sufficient to render the order appealable).

■ Section 110, by barring criminal prosecution for offenses arising from the same criminal episode on which a previous prosecution was based, effectively creates a rule of compulsory joinder. As we stated in *Commonwealth v. Hude*, 500 Pa. 482, 458 A.2d 177 (1983), Section 110 was

> designed to serve two distinct policy considerations: (1) to protect a person accused of crimes from governmental harassment of being forced to undergo successive trials for offenses stemming from the same criminal episode; and (2) as a matter of judicial administration and economy, to assure finality without unduly burdening the judicial process by repetitious litigation.

*Id.* at 489, 458 A.2d at 180 (citations omitted). "By requiring compulsory joinder of all charges arising from a single 'transaction,' a defendant need only once 'run the gauntlet' and confront the 'awesome resources of the state.'" *Commonwealth v. Campana, (Campana I)*, 452 Pa. 233, 251, 304 A.2d 432, 440 (1973).

Section 110(1)(ii) will only bar the instant prosecutions if: (1) the former prosecutions resulted in an acquittal or in a conviction; (2) the instant prosecutions are based on the same criminal conduct or arose from the same criminal episode as the former prosecutions; (3) the prosecutor was aware of the instant charges before the commencement of the trials on the former charges; and (4) the instant charges and the former charges were within the jurisdiction of a single court. 18 Pa.C.S. § 110(1)(ii). It is not disputed that both Bracalielly and Starr satisfy the first and third requirements.

■ Bracalielly plead guilty to charges in Butler County (N.T. 8/29/91 at 14, 25). A guilty plea constitutes a conviction for purposes of pursuing further prosecution pursuant to 18 Pa.C.S. § 110. *Commonwealth v. McPhail*, 429 Pa.Super. 103, 106, 631 A.2d 1305, 1307 (1993). Likewise, Starr was acquitted of the charges arising from the February 8, 1989, incident. Thus, the first requirement was satisfied.

With respect to pre-trial knowledge of the additional pending charges, the Commonwealth never disputed that the pros-

ecutors in Butler County had pre-trial knowledge of the pending charges in Allegheny County. Superior Court Op. at 9. The Allegheny County prosecution was initially postponed because of the pending prosecution in Butler County. (N.T. 8/29/91 at 17). Similarly, the Commonwealth does not contend that those prosecuting Starr for the criminal acts occurring on February 8, 1989, lacked pre-trial knowledge of the pending charges arising from the January 24, 1989, incident. Both arrest warrants were issued on the same date by the same District Justice and bear the same incident number.

Analyzing the second requirement, whether the instant prosecutions are based on the same criminal conduct or arose from the same criminal episode as the former prosecutions, proves significantly more difficult. The term "same criminal episode" can be amorphous and troublesome to apply. The seminal decision discussing the term "same criminal episode" is *Commonwealth v. Hude*, 500 Pa. 482, 458 A.2d 177 (1983).

In *Hude*, the defendant (Hude) was arrested and charged with twenty counts of possession and delivery of marijuana and one count of corruption of a minor. These charges arose from a series of sales to the same individual which allegedly occurred between October 1974 and January 1975. After nine possession and delivery counts were dismissed, the Commonwealth brought Hude to trial on three of the remaining possession and delivery charges and the corruption of a minor charge. Hude was acquitted. The Commonwealth then brought Hude to trial on the remaining eight possession and delivery charges.

We held that these remaining eight charges arose from conduct which formed part of the same criminal episode as the conduct on which the initial three possession and delivery charges were based. Therefore, we concluded that the Section 110 barred the second attempt at prosecution and quashed the subsequent indictments. We reasoned:

[t]o interpret the "single criminal episode" test in such a manner as to permit successive trials for each of the alleged transactions would clearly be offensive to the prohibition

against successive prosecutions as well as an unjustifiable expenditure of judicial resources. The interpretation of the term "single criminal episode" must not be approached from a hypertechnical and rigid perspective which defeats the purposes for which it was created. Thus, where a number of charges are logically and/or temporally related and share common issues of law and fact, a single criminal episode exists, and separate trials would involve substantial duplication and waste of judicial resources. In such cases, failure to consolidate will bar successive prosecutions.

*Hude* at 494, 458 A.2d at 183.

■ To determine whether various acts constitute a single criminal episode, *Hude* requires us to consider two factors: (1) the logical relationship between the acts and (2) the temporal relationship between the acts. *Hude* at 494, 458 A.2d at 183. While considering these factors, we must remember not to interpret the term "same criminal episode" in a "hypertechnical and rigid perspective which defeats the purpose for which it was created." *Id.* However, in determining if the "logical relationship" prong of the test has been met, we must also be aware that a mere de minimis duplication of factual and legal issues is insufficient to establish a logical relationship between offenses. Rather what is required is a substantial duplication of issues of law and fact. *Hude* at 491, 458 A.2d at 181, (quoting Comment, *Commonwealth v. Campana and Section 110 of the Crimes Code: Fraternal Twins*, 35 U.Pitt.L.Rev. 275, 286–87 (1973)).[28]

In *Hude*, we found that such substantial duplication had occurred. We did not, however, reach this conclusion by merely cataloguing simple factual similarities or differences between the various offenses with which the defendant was charged. Rather, we found that these offenses presented substantial duplication of issues of law and fact because the

**28.** A literal reading of *Hude* would seem to indicate that the question of whether offenses share issues of law and fact is a third factor independent of the two other prongs of the *Hude* test. A closer reading, however, reveals that the determination of whether common issues of law and fact exist is not a separate factor, but rather, the means by which the "logically related" prong of the *Hude* test is established.

case did not involve "a situation where different evidence was required to be introduced to establish the alleged individual instances of possession and delivery", but rather, involved a situation in which the Commonwealth's case in both the first and second drug trials rested solely upon the credibility of a single witness. *Hude* at 494, 458 A.2d at 183. Thus, we concluded that the drug charges brought against the defendant were not only temporally related but also logically related, and thus constituted a single criminal episode. In applying this analysis to the instant case, we conclude that Bracalielly's criminal actions fail to constitute a single criminal episode.

The Superior Court, in concluding that Bracalielly's acts were not part of the "same criminal episode," stated:

> [T]he participants and the coconspirators changed; the quantity and cost of the drugs differed; the sales occurred in different locations; and two different police departments were involved in separate undercover investigations.

Superior Court Memorandum Op. at 11. However, this is the type of rigid hypertechnical analysis which *Hude* warns against. In any string of drug sales, the quantity, cost, and location will differ. *Hude* itself determined that drug sales occurring on different dates and involving varying amounts of marijuana (and thus varying prices) was insufficient to escape the conclusion that the sales were part of the same criminal episode. *Hude* at 493, 458 A.2d at 182–3.

■ The critical factor which distinguishes this case from *Hude* and mandates the conclusion that the transactions in Butler County and Allegheny County were not part of the same criminal episode is the *independent* involvement of two distinct law enforcement entities, for it prevents the substantial duplication of issues of law and fact required under *Hude* for the transactions to be deemed logically related. Both Butler and Allegheny County law enforcement authorities were conducting *separate* undercover investigations of Bracalielly. However, no law enforcement officer from Allegheny County participated in the Butler County transactions, and no law enforcement officer from Butler County participated in

the Allegheny County transactions.[29]   As a result, the instant case is clearly distinguishable from *Hude* since proof of each individual instance of possession and delivery in each county would not rest solely on the credibility of a single witness, but rather, would require the introduction of the testimony of completely different police officers and expert witnesses as well as the establishment of separate chains of custody. Hence, while the Allegheny County and Butler County transactions may have involved the same informant, they do not present the substantial duplication of issues of law and fact necessary to establish a logical relationship between the crimes.

Since no logical relationship exists between the Butler County and Allegheny County transactions, the Allegheny County charges were not part of the "same criminal conduct" as those in Butler County and, therefore, 18 Pa.C.S. § 110 does not bar the Allegheny County prosecution.   While Deardon's participation in the transactions is certainly relevant to the analysis, it is in no way dispositive and cannot overcome the existence of two separate and independent investigations aimed at Bracalielly.   We next turn to *Commonwealth v. Starr.*

**29.**   The following testimony given by Detective Evanson of the Cranberry Township Police (Butler County) supports this conclusion:

A.   I believe [Deardon] did.   I believe he advised me of—I can't remember the dates, but if I recall properly he was working with another agency and I do believe he mentioned something about having a deal set up with that agency and Mr. Bracalielly.

Q.   And you indicated that you believe he you mentioned that he had a deal set up?

A.   Yes.

Q.   Did he ever mention that he had a deal?

A.   Tell you the truth, I can't recall.

Q.   So you can't recall if this confidential informant was involved in what we have termed a deal prior to August 11?

A.   I would say that my conversation with him I can't recall as to him indicating that the deal was completed or not.   I really wasn't concerned at that point because that was an investigation in Allegheny County.

(N.T. 6/12/91 (Butler County) at 9) attached as Exhibit H to Defendant's Memorandum in Support of Motion to Quash.   Thus, although Butler County authorities were aware of the investigation in Allegheny County, they were in no way involved in that investigation.

We conclude that the two drug transactions in *Commonwealth v. Starr* were similarly not part of the "same criminal episode." Starr contends that the same confidential informant was used to facilitate each transaction and both purchases were part of an ongoing investigation. Starr argues that he was only arrested after he refused to continue dealing. As support, Starr cites to a preliminary hearing transcript. Unfortunately for Starr, this hearing was conducted before a district magistrate and the transcript was never made part of the certified record. The transcript only appears in Starr's reproduced record.

It is a well settled principle that appellate courts may only consider facts which have been duly certified in the record on appeal. *Murphy v. Murphy*, 410 Pa.Super. 146, 155, 599 A.2d 647, 652 (1991). *See also Commonwealth v. Young*, 456 Pa. 102, 115, 317 A.2d 258, 264 (1974) (only facts which appear in official record may be considered by a court). An item does not become part of the certified record by simply copying it and including it in the reproduced record. *Murphy* at 155, 599 A.2d at 652 (citing *Dorn v. Stanhope Steel, Inc.*, 368 Pa.Super. 557, 563 n. 1, 534 A.2d 798, 801 n. 1 (1987), *alloc. denied*, 518 Pa. 656, 544 A.2d 1342 (1988)). Therefore, we will not consider the preliminary hearing transcript which is found in Starr's reproduced record, but not in the certified record.

Starr argues that even if we ignore the preliminary hearing transcript, there are sufficient facts of record to bring this case squarely within *Hude*. Starr then cites to numerous "identities of fact," including: (1) both criminal complaints were filed on warrants issued thereon on the same day by the same district justice; (2) upon his arrest, he appeared before the same district justice on both complaints; (3) he was preliminarily arraigned before the same district justice; (4) the criminal informations were almost identical except for the dates, quantities, and prices involved; and (5) a single Notice of Arraignment addressed both term numbers. Through these and other similarities in treatment, Starr claims that the

Commonwealth treated the two cases as one from the beginning.

■ However, such similarities do not prove the transactions were part of the same criminal episode. They fail to demonstrate the required logical or temporal relationship between the acts. *Hude* requires more. Starr must show how the two transactions themselves were related; not merely how their treatment was related. Alleging that the Commonwealth treated the cases as one is an insufficient nexus. Therefore, upon the facts of the certified record, we are constrained to conclude that the two transactions were not part of the same criminal episode.

Because we conclude that neither *Commonwealth v. Bracalielly* nor *Commonwealth v. Starr* involve drug transactions which constitute a "single criminal episode," we find that Section 110 does not bar the instant prosecutions of either Bracalielly or Starr. Therefore, we need not address the issue of whether the violations in each case were within the jurisdiction of a single court.

In conclusion, Section 110 does not bar the charges against Bracalielly brought in Allegheny County. They were not part of the same criminal episode as those brought in Butler County and we affirm the order of the Superior Court in *Commonwealth v. Bracalielly.* Similarly, Section 110 does not bar prosecution of Starr for the charges arising from the January 24 incident and we therefore affirm the order of the Superior Court in *Commonwealth v. Starr.*

PAPADAKOS, J., did not participate in the decision of *Commonwealth v. Mark Bracalielly,* No. 74 W.D. Appeal Dkt. 1993.

ZAPPALA, J., files a Concurring and Dissenting Opinion in which CAPPY, J., joins.

MONTEMURO, J., is sitting by designation.

ZAPPALA, Justice, concurring and dissenting.

I respectfully dissent from the decision of *Commonwealth v. Bracalielly*. As the majority notes, the principal case defining what constitutes a single criminal episode is *Commonwealth v. Hude*. In *Hude*, we applied Section 110 in determining that eleven charges of possession and delivery arising out of a series of transactions were so logically and temporally related as to require that all the charges be tried together. We relied on the fact that the offenses occurred in the same place over a four month period, were arranged by the same person with the same buyer of similar amounts of drugs, and no additional or corroborative testimony would have been required in a second trial.

*Hude* requires examination of two factors to determine whether various acts constitute one criminal episode: (1) the logical relationship between the acts and (2) the temporal relationship between the acts. In the instant case, the four transactions occurred within a thirteen day period, and the same confidential informant, Michael Deardon, arranged each transaction by calling Bracalielly at his home in Allegheny County. Also, Bracalielly testified that during each transaction, a future transaction was discussed (R. 48a). Thus, the facts are analogous to those in *Hude* where a temporal and logical relationship was found.

The majority finds that the critical factor which distinguishes this case from *Hude* is the "independent" involvement of the two distinct law enforcement agencies of Butler County and Allegheny County. Maj. op. at 472. It emphasizes the fact that these authorities were conducting separate undercover investigations of Bracalielly. I question the importance the majority assigns to this factor and whether the record supports the finding that the investigations were independent.

In footnote twenty-nine, the majority quotes testimony given by Detective Evanson of the Cranberry Township (Butler County) Police. The majority cites the portion of the testimony establishing that the informant merely advised Detective Evanson that he was working with Allegheny County authori-

478

ties. The majority, however, fails to note that the testimony of Detective Evanson also established that the informant specifically told him the names of several officers from Allegheny County with whom he was working and that Evanson himself spoke with those officers.[1] Moreover, the majority also fails to note that agents of the Attorney General were involved in the transactions.[2] Thus, it is not clear that the investigations were in fact independent.

The majority seemingly creates a per se rule that when two law enforcement authorities investigate a single defendant, the offenses cannot be one criminal episode. I disagree. As noted, the proper analysis is whether the acts are temporally and logically related. The fact that two different police departments investigated a single defendant does not, in itself, establish either requirement. The evidence presented in this case clearly establishes one criminal episode notwithstanding the fact that two police departments were involved.

Having determined that the offenses in *Bracalielly* constitute one criminal episode, we must examine the fourth prong of § 110, that the "instant charges and the former charges were within the jurisdiction of a single court." 18 Pa.C.S. § 110(1)(ii).[3]

The Commonwealth relies on Superior Court cases which interpret the "within the jurisdiction of a single court" language of § 110 to mean venue.[4] The term "venue," however,

1. (N.T. 6/12/91 (Butler County) at 9) attached as Exhibit H to Defendant's Memorandum in Support of Motion to Quash.

2. Agent Barbara Roberts was involved in both the August 17, 1990, Allegheny County transaction and the August 20, 1990 Butler County transaction.

3. This prong of a Section 110 analysis was not at issue in *Commonwealth v. Starr* as there was no multi-county prosecutions.

4. *See* e.g. *Commonwealth v. Cromwell*, 329 Pa.Super. 329, 478 A.2d 813 (1984) (burglaries committed in Somerset and Bedford Counties could not have been consolidated for trial in Somerset County where some of the burglaries took place in Bedford County, even where it was subsequently determined that all of the burglaries were part of the same criminal episode, and therefore, prosecution was not barred by § 110); *Commonwealth v. Nichelson*, 294 Pa.Super. 438, 440 A.2d 545 (1982) (defendant's prosecution for offenses in Philadelphia County including,

does not appear in the statute. Had the Legislature intended such a meaning, it could have easily stated that the instant and former charges be "within the jurisdiction and venue of a single court." In any event, the Superior Court cases are not controlling. Our Court has never addressed the application of § 110 in a case involving multi-county offenses. Moreover, when we have discussed the "jurisdiction of a single court" language of § 110, we intimated that the term dealt with the competency of a court, and not necessarily venue.

In *Commonwealth v. Beatty*, 500 Pa. 284, 455 A.2d 1194 (1983), we held that § 110 did not bar the prosecution of an aggravated assault charge when the defendant had previously pled guilty to the summary offense of failing to identify himself at the scene of an accident. Our Court distinguished the two offenses by asserting that one was a summary offense within the jurisdiction of the district justice, while the other was within the jurisdiction of the court of common pleas. Thus, the offenses were not "within the jurisdiction of a single court."

We extended this holding in *Commonwealth v. Taylor*, 513 Pa. 547, 522 A.2d 37 (1987), to include summary offenses under the Crimes Code, again holding that the district justice had original jurisdiction over the summary offense of harass-

---

*inter alia,* theft, robbery and conspiracy to commit the same, was not barred because jurisdiction was not proper in a single court); *Commonwealth v. Caden,* 326 Pa.Super. 192, 473 A.2d 1047 (1984) (defendant's guilty plea in Delaware County to theft related offenses for tractor stolen in Delaware County did not bar subsequent prosecution in Montgomery County of offenses based upon possession of a stolen truck upon which the stolen tractor was sitting during arrest because the offenses were committed against the peace of the respective counties, and defendant was properly charged in both counties); *Commonwealth v. Harris,* 275 Pa.Super. 18, 418 A.2d 589 (1980) (prosecution in Montgomery County was not barred by prior convictions in Philadelphia County which arose out of the same criminal episode of forcibly abducting the victim from her home in Philadelphia, and taking her to Montgomery County where she was threatened); and *Commonwealth v. Simeone,* 222 Pa.Super. 376, 294 A.2d 921 (1972) (defendant's acquittal of charges of receiving stolen property in Philadelphia County did not bar a subsequent prosecution for burglary, larceny and receiving stolen goods in Bucks County because those offenses occurred in Bucks County and were beyond the jurisdiction of Philadelphia County).

ment, while it lacked jurisdiction over a misdemeanor charge of carrying a concealed weapon.

Thus, when considering the purposes underlying the statute, I read "jurisdiction" in § 110 to mean just that. The fact that multiple offenses stemming from one criminal episode cross a county line should not require the Commonwealth to expend resources on two trials and thereby submit the defendant to successive prosecutions. To hold otherwise would be inconsistent with the rationale of § 110.[5]

It must be remembered that the other requirements of § 110 must still be satisfied in order to bar a subsequent prosecution. Obviously, the former prosecution must have resulted in an acquittal or a conviction, there must be one criminal episode, and the prosecutor must be aware of the instant charges before the commencement of the trial on the former charges.[6] The jurisdictional requirement of § 110 would then ensure that a single court would be competent to hear the matter.

Even if one rejects this interpretation and finds that "jurisdiction" in § 110 means venue, the instant charges are still barred. The question to be answered is not necessarily whether Butler County had jurisdiction over all the offenses, but whether the four transactions were within the jurisdiction of a single court. The Crimes Code provides that if a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship. 18 Pa.C.S. § 903(c). The multiple drug transactions in the present case were the object of the same ongoing conspiracy between Bracalielly and the informant. The agreement underlying this conspiracy was entered into in Allegheny

5. My conclusion here is not meant to abrogate the well-established rule that the locus of the crime generally dictates the county in which charges must be brought. The conclusion I reach is limited to circumstances clearly fitting within the confines of § 110.

6. Contrary to the Commonwealth's contention, a criminal could not strategically plan his crimes so that the entrance of a guilty plea of a lesser offense in one county would negate the future prosecution of more serious offenses in another county.

County, since the informant arranged the transactions by continuously calling Bracalielly at his home.[7] One conspiracy was therefore established, with Allegheny County the proper venue.

In conclusion, because the requirements of § 110 have been satisfied, I would reverse the judgment of the Superior Court affirming the denial of Bracalielly's motion to quash.

Regarding *Commonwealth v. Starr*, I concur only in the result reached by the majority. I agree that the evidence *of record* was not sufficient to establish that the transactions there arose from one criminal episode. I reach this conclusion, however, solely because the evidence establishing that the same confidential informant facilitated both transactions was not part of the certified record and therefore is not to be considered in the analysis. Had the preliminary hearing testimony been made a part of the certified record, the required logical relationship would have clearly been established.

CAPPY, J., joins this Concurring and Dissenting Opinion.

---

**7.** Bracalielly testified that as to all four transactions, planning and substantial steps were taken in Allegheny County. (R. 33a–41a.) Bracalielly even picked up the informant in Allegheny County before driving to Cranberry Township, to conclude the August 20, 1990, Butler County transaction. (R. 48a–49a). Bracalielly further testified that it was the informant who suggested the locations where the transactions should take place, (R. 35a, 37a), and that as to the two Butler County transactions, the agreement to sell or buy the drugs was entered into in Allegheny County (R. 36a–37a, 40a–41a).