J-A14016-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| PATRICK JOSEPH MCLAINE | |
| Appellant | No. 1755 MDA 2013 |

Appeal from the Order Entered August 28, 2013
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-0003459-2012

BEFORE:  FORD ELLIOTT, P.J.E., OLSON and STRASSBURGER*, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED SEPTEMBER 08, 2014**

Appellant, Patrick Joseph McLaine, appeals from an order that denied his omnibus pretrial motion, which was entered on August 28, 2013 in the Criminal Division of the Court of Common Pleas of Cumberland County.[1]  We affirm.

The trial court aptly summarized the relevant factual and procedural history in this case as follows:

On April 30, 2009, the Hampden Township Board of Commissioners approved a Street Light Energy Savings Purchase

---

[1] This appeal challenges an order denying Appellant's motion to dismiss charges filed against him.  Appellant's motion alleged that the compulsory joinder rule and the double jeopardy clause compelled dismissal.  We have jurisdiction over interlocutory appeals involving such claims.  **See Commonwealth v. Schmidt**, 919 A.2d 241, 244 (Pa. Super. 2007), *appeal denied*, 936 A.2d 40 (Pa. 2007).

* Retired Senior Judge assigned to the Superior Court.

Agreement (hereinafter "Agreement") with Municipal Energy Managers, Inc., ("MEM"), a company, which was represented by its President, Robert Kearns ("Kearns") and its Treasurer, [Appellant]. Under this Agreement, MEM would acquire streetlight systems for Hampden Township from PP&L [("PPL")], install energy saving equipment, provide other contractual services, and convert the lighting systems from PPL's ownership to Hampden Township's ownership.

Hampden Township and MEM signed a contract on June 26, 2009. Also on June 26, 2009, Hampden Township Manager, Michael Gossert, met with Kearns and [Appellant] to discuss Hampden Township transferring money to MEM. As per the contract and discussions between the parties, Hampden Township transferred $1,312,000[.00] to MEM between June 26, 2009, and June 29, 2009. Hampden Township transferred the approximately $1.3 million to MEM in three separate payments of $546,000[.00] and $266,000[.00] on June 26, 2009, and the remainder, $500,000[.00], on June 29, 2009. Kearns told the Township Officials that the $546,000[.00] was required to make a good faith payment to PPL and would be placed into a PPL account. The remaining balance of the $1.3 million was for make ready work that PPL required to complete the purchase of the streetlights. MEM would begin re-lamping, tagging, and mapping the street light system upon receipt of the money. Kearns stated that he needed the money to begin the make ready work the next week.

On June 30, 2009, at a meeting between PPL and MEM, it was PPL's understanding that the $546,000[.00] payment from MEM was to be applied to an outstanding balance of MEM's, completely unrelated to Hampden Township. MEM had past due invoices with PPL in the amount of $473,000[.00]. MEM did not mention, and PPL was not aware, that the $546,000[.00] came from Hampden Township. MEM also provided PPL with a list of municipalities they were working in, and Hampden Township was not on the list.

On August 5, 2009, PPL sent a letter to MEM, which was forwarded to Hampden Township, giving notice to MEM of unauthorized work being done on the streetlights in Hampden Township. This work was performed by a contractor hired by MEM to begin the make ready work on the streetlights. At this time, Hampden Township contacted PPL, and the Township was

informed that MEM had not paid PPL any money on its behalf or made agreements with PPL to work on its streetlights. It was not until September 2010 that a payment was finally made in relation to Hampden Township when PPL received a $55,000[.00] payment from MEM for an initial survey.

On May 12, 2011, Kearns told Hampden Township Officials that he would provide evidence of the existence of the $546,000[.00] being held in a PPL account. The Township requested that MEM transfer all remaining funds to a separate account in the name of Hampden Township. This request was never complied with. The criminal information was filed in Cumberland County for this matter on March 25, 2013.

Criminal informations were also filed against [Appellant] for similar offenses in Northampton County on May 2, 2012, in Lehigh County on May 2, 2013, and in Bucks County on October 10, 2013. After trial during the week of January 7, 2013, in Northampton County, [Appellant] was convicted of [t]heft by [f]ailure to [m]ake [r]equired [d]isposition of [f]unds and acquitted of the charges for [c]onspiracy and [m]isapplicaton of [g]overnment [f]unds. [Appellant] filed an [o]mnibus [p]retrial [m]otion to th[e Cumberland County trial c]ourt that included a [m]otion to [d]ismiss [p]ursuant to [h]abeas [c]orpus claiming that the Commonwealth did not establish a *prima facie* case for any of the charges brought, a [m]otion to [d]ismiss/[j]oin [p]ursuant to [c]ompulsory [j]oinder and a [m]otion to [d]ismiss [p]ursuant to [d]ouble [j]eopardy. After consideration of [Appellant's] [o]mnibus [p]retrial [m]otion, memorandums filed by the parties, and after argument on August 5, 2013, th[e trial c]ourt denied [Appellant's] motion. [Appellant] filed a [n]otice of [a]ppeal on September 25, 2013, followed by a [concise s]tatement of [m]atters complained of on [a]ppeal on October 9, 2013.

Trial Court Opinion, 11/22/13, at 1-4 (record citations omitted).

In his brief, Appellant raises the following issue for our review:

Whether, where [Appellant] was tried and convicted in Northampton County on charges related to the same criminal episode as subsequent charges in Cumberland County, the Cumberland County charges are barred by double jeopardy and/or compulsory joinder?

- 3 -

Appellant's Brief at 7 (complete capitalization omitted).

Appellant was convicted in Northampton County of theft by failure to make required disposition of funds. He now faces similar, subsequent charges in Cumberland County, Lehigh County, and Bucks County. In his sole claim on appeal, Appellant alleges that the principles of compulsory joinder and double jeopardy bar these subsequent charges because they arose from the same criminal episode underlying the charges addressed in Northampton County. To support his contention, Appellant points out that, "All charges related to business between [Appellant's] company, MEM, and local municipalities. All charges stem from contracts for the sale of streetlights. All charges claim street lights were paid for and never received by the municipalities. These charges all involve a single company: MEM. They involve a single bank account in which funds from numerous counties were comingled and are therefore inseparable. The charges are all related in time and substance." Appellant's Brief at 13. We first address the issue of compulsory joinder and then turn to Appellant's double jeopardy claim. For the following reasons, we conclude that Appellant is not entitled to relief.

Section 110 of the Crimes Code governs compulsory joinder of criminal prosecutions. *See* 18 Pa.C.S.A. § 110. We are guided by the following principles in our review of claims that invoke § 110.

> The compulsory joinder statute is a legislative mandate that a subsequent prosecution for a violation of a provision of a statute that is different from a former prosecution, or is based on

different facts, will be barred in certain circumstances. 18 Pa.C.S.A. § 110. As amended in 2002, Section 110 states in relevant part:

## § 110. When prosecution barred by former prosecution for different offense

Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:

(1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for same offense) and the subsequent prosecution is for:

(i) any offense of which the defendant could have been convicted on the first prosecution;

(ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and occurred within the same judicial district as the former prosecution unless the court ordered a separate trial of the charge of such offense; or

(iii) the same conduct, unless:

(A) the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil; or

(B) the second offense was not consummated when the former trial began.

18 Pa.C.S.A. § 110 (emphasis added).

As has been summarized by our [Supreme] Court, Section 110(1)(ii), which is the focus in this appeal, contains four

requirements which, if met, preclude a subsequent prosecution due to a former prosecution for a different offense:

(1) the former prosecution must have resulted in an acquittal or conviction;

(2) the current prosecution is based upon the same criminal conduct or arose from the same criminal episode as the former prosecution;

(3) the prosecutor was aware of the instant charges before the commencement of the trial on the former charges; and

(4) the current offense occurred within the same judicial district as the former prosecution.

See [Commonwealth v.] Nolan, 855 A.2d [834, 839 (Pa. 2004)]; Commonwealth v. Hockenbury, 701 A.2d 1334, 1337 ([Pa.] 1997). Each prong of this test must be met for compulsory joinder to apply.

Commonwealth v. Fithian, 961 A.2d 66, 71-72 (Pa. 2008) (parallel citation omitted).

In deciding whether the current prosecution is based upon the same criminal conduct or arose from the same criminal episode as the former prosecution,[2] our Supreme Court has said that, "courts considering the logical relationship prong [must look to] the temporal and logical relationship between the charges to determine whether they arose from a single criminal episode." Commonwealth v. Reid, 77 A.3d 579, 582 (Pa. 2013). "Generally, charges against a defendant are clearly related in time and

_____

[2] This factor is commonly referred to as the "logical relationship" prong. See Commonwealth v. Reid, 77 A.3d 579, 582 (Pa. 2013).

require little analysis to determine that a single criminal episode exists."

*Commonwealth v. Hude*, 458 A.2d 177, 181 (Pa. 1983). With respect to

whether a logical relationship exists, the Supreme Court has explained:

> In ascertaining whether a number of statutory offenses are logically related to one another, the court should initially inquire as to whether there is a substantial duplication of factual, and/or legal issues presented by the offenses. If there is duplication, then the offenses are logically related and must be prosecuted at one trial. The mere fact that the additional statutory offenses involve additional issues of law or fact is not sufficient to create a separate criminal episode since the logical relationship test does not require an absolute identity of factual backgrounds.

*Id*. (internal quotation marks omitted). Substantial duplication of issues of

law and fact is a prerequisite, as *de minimis* duplication is insufficient to

establish a logical relationship between offenses. *Commonwealth v.*

*Bracalielly*, 658 A.2d 755, 761 (Pa. 1995). Where different evidence is

required to establish the defendant's involvement in criminal activity,

substantial duplication is not demonstrated.[3] *See id*. at 761–62. Our

_____

[3] In considering the temporal and logical relationship between criminal acts, we are guided by the policy considerations that § 110 was designed to serve:

> (1) to protect a person accused of crimes from governmental harassment of being forced to undergo successive trials for offenses stemming from the same criminal episode; and (2) as a matter of judicial administration and economy, to assure finality without unduly burdening the judicial process by repetitious litigation.

*Commonwealth v. Anthony*, 717 A.2d 1015, 1018–1019 (Pa. 1998) (citation omitted).

Supreme Court has also recognized a *per se* disqualification for offenses that occur in different judicial districts. **See Fithian**, 961 A.2d at 77 ("we hold the General Assembly intended to preclude from the reach of the compulsory joinder statute those current offenses that occurred wholly outside of the geographic boundaries of the judicial district in which the former prosecution was brought, even though part of a single criminal episode[]").

In the present case, the trial court offered the following explanation for rejecting Appellant's compulsory joinder claim.

> In this case [], it is alleged that [Appellant] ran a profitable *enterprise* in which he and Kearns, through MEM, acquired funds from townships in at least four different counties under the impression that the funds would be paid to PPL so the townships could purchase the streetlights. Instead, it is alleged that the funds were used to pay past debt of MEM. Although the Cumberland County charges and underlying facts are similar to those in Northampton [County], they do not rise to the level of compulsory joinder.
>
> Here, the Commonwealth will have to call a significant number of material witnesses that were not required for the Northampton County charges, including the Hampden Township Officials that negotiated the deal with MEM and [Appellant]. The pending charges in Bucks and Lehigh Counties will also require different material witnesses. The Cumberland County charges involved a separate investigation from the Northampton, Bucks and Lehigh County charges. **See Bracalielly**[, 658 A.2d] at 762 (finding that the independent involvement of two distinct law enforcement entities prevents a substantial duplication of issues of law and fact). Perhaps most importantly, each case involves a different victim. Overall, while the cases may involve an overlap of some witnesses and facts, the separate prosecutions in each of the four counties constitute separate criminal episodes that involved separate investigations, victims, witnesses and geographical boundaries culminating in one criminal enterprise. Therefore, the pending Cumberland County charges are not subject to compulsory joinder.

We now turn to the fourth prong, whether the pending charges occurred within the same judicial district as the former prosecution. Even if [Appellant's] charges could be determined as the same criminal episode (as opposed to enterprise), "the General Assembly intended that, for purposes of the compulsory joinder statute, the phrase 'judicial district' means the geographical area established by the General Assembly in which a court of common pleas is located." *Fithian*, 961 A.2d at 75. The Pennsylvania Supreme Court further held that the General Assembly intended to preclude from the reach of the compulsory joinder statute current offenses that occurred outside of the geographic boundaries of the judicial district in which the former prosecution was brought even though part of a single criminal episode. *Id*. at 77. Since the current charges are pending in Cumberland County, which is outside the judicial district of the former prosecution in Northampton County, the fourth prong has not been met. [Appellant's] Cumberland County charges should, therefore, not be dismissed.

For all of the reasons stated *supra*, joinder of Cumberland County charges to the pending Bucks and Lehigh County charges is also inappropriate. This Court did not err in denying [Appellant's] [m]otion to [d]ismiss and/or [j]oin [b]ased on [c]ompulsory [j]oinder.

Trial Court Opinion, 11/22/2013, at 6-7.

The trial court's determinations are consistent with the principles underlying the compulsory joinder statute, which we have stated above. Thus, after careful review of the certified record and the submissions of the parties, we conclude that Appellant is not entitled to relief on his compulsory joinder claim.

The following principles govern our examination of Appellant's double jeopardy claim.

Consideration of the constitutional protections contained in the double jeopardy clauses is necessary where the statutory

- 9 -

provisions relating to subsequent prosecutions are not applicable. ***Commonwealth v. Keenan***, 530 A.2d 90, 93 (Pa. Super. 1987) (citations omitted). We employ a unitary analysis of the state and federal double jeopardy clauses since the protections afforded by each constitution are identical. ***Id.*** [at 93]. The protections afforded by double jeopardy are generally recognized to fall within three categories: (1) protection against a second prosecution for the same offense after an acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. ***Id.*** [at 93]. The constitutional prohibition of double jeopardy also protects the convicted defendant from multiple prosecutions for the same offense, requiring a "single criminal episode" analysis. ***See [Commonwealth v. Gimbara***, 835 A.2d 371, 374 (Pa. Super. 2003)] (citation omitted).

***Schmidt***, 919 A.2d at 250.

The trial court concluded that the double jeopardy clause did not support dismissal of Appellant's charges because the crimes alleged in Cumberland County were not part of the same criminal episode relating to the prior prosecution that went forward in Northampton County. ***See*** Trial Court Opinion, 11/22/13, at 8. We concur with this assessment. Hence, we affirm.

Order affirmed. Jurisdiction relinquished. Case remanded for further proceedings.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/8/2014

- 10 -