J-S05028-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVID W. DANIELS, JR., | |
| Appellant | No. 603 MDA 2015 |

Appeal from the Order Entered February 25, 2015
In the Court of Common Pleas of Bradford County
Criminal Division at No(s): CP-08-CR-0000811-2014

BEFORE:  BENDER, P.J.E., SHOGAN, and PLATT,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED APRIL 07, 2016**

Appellant, David W. Daniels, Jr., appeals from the order entered February 25, 2015, denying his motion to dismiss pursuant to 18 Pa.C.S. § 110.[1]  After careful review, we reverse.

The record reflects the following facts.  State Police narcotics officers arranged for a heroin purchase to occur on September 17, 2014, between

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] We note that the order denying Appellant's motion to dismiss is not a final order.  However, because 18 Pa.C.S. § 110 statutorily "embodies the same basic purposes as those underlying the double jeopardy clauses, the interlocutory appealability of double jeopardy claims has been applied to claims based on Section 110." **Commonwealth v. Bracalielly**, 658 A.2d 755, 759-760 (Pa. 1995).  Therefore, we may properly consider this appeal. **Commonwealth v. M.D.P.**, 831 A.2d 714, 717 n.1 (Pa. Super. 2003).

Appellant and a confidential informant ("CI"). In anticipation of the pre-arranged buy, state troopers contacted officers from the Towanda Borough Police Department. Troopers advised Towanda Borough officers of the pre-arranged buy involving Appellant and informed Towanda Borough officers that Appellant would be operating a vehicle with a suspended license. State troopers requested that Towanda Borough officers stop Appellant following the pre-arranged buy, purportedly on the basis of the driving-under-suspension violation.

Following the pre-arranged heroin buy, a trooper followed Appellant to a local mini market and called the Towanda Borough officers to advise them of Appellant's location. Towanda Borough officers proceeded to Appellant's location and stopped Appellant. Appellant was charged with driving under suspension DUI-related, possession of a controlled substance, possession of drug paraphernalia, and required financial responsibility. A preliminary hearing on these charges was held on September 24, 2014. A plea was negotiated in which Appellant pled guilty to possession of drug paraphernalia and driving under suspension; the remaining charges were dismissed. Pursuant to the plea agreement, Appellant was sentenced on September 24, 2014, to sixty days of incarceration.

Approximately one month later, on October 21, 2014, Trooper Michael Adams filed a complaint charging Appellant with delivery of a controlled substance, criminal use of a communication facility, and driving under

suspension DUI-related based on the events of September 17, 2014. Appellant filed a motion to dismiss pursuant to 18 Pa.C.S. § 110. A hearing was held on January 23, 2015. Following the hearing, the trial court denied Appellant's motion. This timely appeal followed.[2]

Appellant presents the following issues for our review:

I.      Whether the compulsory joinder rule prohibits the instant prosecution?

>       A.      Was the instant offense part of the same criminal episode as the offense to which [Appellant] previously entered a plea of guilty?

>       B.      Was the appropriate prosecuting officer aware of the instant charges at the time of resolution of the prior charges?

Appellant's Brief at 4 (full capitalization omitted).

_____

[2] The trial court issued an order on February 25, 2015, denying Appellant's motion to dismiss. However, the docket indicates that the order was not mailed to counsel until March 25, 2015. The thirty-day appeal period begins when the clerk of courts mails or delivers copies of the order to the parties in all criminal cases, excluding the imposition of sentence without the filing of post-sentence motions. *See* Pa.R.A.P. 903(a) ("Except as otherwise prescribed by this rule, the notice of appeal . . . shall be filed within 30 days after the entry of the order from which the appeal is taken"); Pa.R.A.P. 108(a)(1) ("the day of entry shall be the day the clerk of the court or the office of the government unit mails or delivers copies of the order to the parties"); *see also Commonwealth v. Jerman*, 762 A.2d 366, 368 (Pa. Super. 2000) ("In a criminal case, the date of entry of an order is the date the clerk of courts enters the order on the docket, furnishes a copy of the order to the parties, and records the time and manner of notice on the docket"). Because the appeal was filed within thirty days of March 25, 2015, the date the order was mailed by the clerk of courts, the appeal is timely.

We set forth our well-settled standard of review: "An appeal grounded in double jeopardy raises a question of constitutional law. This [C]ourt's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is *de novo*…." ***Commonwealth v. Vargas***, 947 A.2d 777, 780 (Pa. Super. 2008) (citations and quotations omitted); ***see also Commonwealth v. Simmer***, 814 A.2d 696, 698 (Pa. Super. 2002) (Our review is plenary when the issue is whether the compulsory joinder rule, 18 Pa.C.S. § 110, bars cases.)

"The compulsory joinder statute [18 Pa.C.S. § 110,] is a legislative mandate that a subsequent prosecution for a violation of a provision of a statute that is different from a former prosecution, or is based on different facts, will be barred in certain circumstances." ***Commonwealth v. Fithian***, 961 A.2d 66, 71 (Pa. 2008). Section 110 provides, in relevant part:

> **§ 110. When prosecution barred by former prosecution for different offense**
>
> Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:
>
> (1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for same offense) and the subsequent prosecution is for:
>
>> (i) any offense of which the defendant could have been convicted on the first prosecution;

(ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of commencement of the first trial and occurred within the same judicial district as the former prosecution unless the court ordered a separate trial of the charge of such offense; or

(iii) the same conduct, unless:

(A) the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil; or

(B) the second offense was not consummated when the former trial began.

18 Pa.C.S. § 110.

As explained by our Supreme Court:

The compulsory joinder rule bars a subsequent prosecution if each prong of the following test is met: (1) the former prosecution resulted in an acquittal or conviction; (2) the current prosecution was based on the same criminal conduct or arose from the same criminal episode; (3) the prosecutor in the subsequent trial was aware of the charges before the first trial; and (4) all charges were within the same judicial district as the former prosecution.

*Commonwealth v. Nolan*, 855 A.2d 834, 839 (Pa. 2004) (footnote and citations omitted).

Our Supreme Court has further stated:

[18 Pa.C.S. § 110] reflects Pennsylvania's compulsory joinder rule, which is designed to protect a defendant's double-jeopardy

interests where the Commonwealth initially declines to prosecute him for the present offense, electing to proceed on different charges stemming from the same criminal episode.

**Commonwealth v. Laird**, 988 A.2d 618, 628 (Pa. 2010) (citations omitted).

The purpose behind Section 110 is two-fold. "First, it protects a defendant from the governmental harassment of being subjected to successive trials for offenses stemming from the same criminal episode. Secondly, the rule assures finality without unduly burdening the judicial process by repetitious litigation." **Commonwealth v. Failor**, 770 A.2d 310, 313 (Pa. 2001).

Here, the parties do not dispute that elements one and four of the four-prong test set forth in **Nolan** are met. As noted, Appellant pled guilty to charges related to the traffic stop by Towanda Borough officers. A guilty plea constitutes a conviction for purposes of pursuing further prosecution pursuant to 18 Pa.C.S. § 110. **Commonwealth v. Bracalielly**, 658 A.2d 755, 760 (Pa. 1995). Thus, the first element is satisfied. Additionally, the current charges and the former charges are within the jurisdiction of a single court as required by the fourth prong. Accordingly, we agree that elements one and four have been met.

Appellant posits that the second and third elements are also met and therefore, the compulsory joinder rule applies. Appellant first argues that a single criminal episode exists in this case because the charges are logically

and temporally related and share common issues of law and fact. Appellant's Brief at 11. Appellant contends that the charges are intertwined, and the charges disposed of previously, as related to the stop by Towanda Borough police, are a subset of the criminal episode as outlined in the instant complaint. *Id.* at 11-12.

The seminal decision discussing the term "same criminal episode" is **Commonwealth v. Hude***,* 458 A.2d 177 (Pa. 1983). Our Supreme Court summarized that holding as follows:

> In **Hude***,* the defendant (Hude) was arrested and charged with twenty counts of possession and delivery of marijuana and one count of corruption of a minor. These charges arose from a series of sales to the same individual which allegedly occurred between October 1974 and January 1975. After nine possession and delivery counts were dismissed, the Commonwealth brought Hude to trial on three of the remaining possession and delivery charges and the corruption of a minor charge. Hude was acquitted. The Commonwealth then brought Hude to trial on the remaining eight possession and delivery charges.

> We held that these remaining eight charges arose from conduct which formed part of the same criminal episode as the conduct on which the initial three possession and delivery charges were based. Therefore, we concluded that the Section 110 barred the second attempt at prosecution and quashed the subsequent indictments. We reasoned:

> > [t]o interpret the "single criminal episode" test in such a manner as to permit successive trials for each of the alleged transactions would clearly be offensive to the prohibition against successive prosecutions as well as an unjustifiable expenditure of judicial resources. The interpretation of the term "single criminal episode" must not be approached from a hypertechnical and rigid perspective which defeats the purposes for which it was created. Thus, where a number of charges are logically and/or temporally

- 7 -

> related and share common issues of law and fact, a single criminal episode exists, and separate trials would involve substantial duplication and waste of judicial resources. In such cases, failure to consolidate will bar successive prosecutions.

> *Hude* [500 Pa.] at 494, 458 A.2d at 183.

*Bracalielly*, 658 A.2d at 761. "In *Hude,* both prosecutions contained a substantial duplication of issues of fact and law, which not only forced a defendant to 'run the gauntlet' repeated times and confront the 'awesome resources of the state' successively, but also sanctioned 'an unjustifiable expenditure of judicial resources.'" *Nolan*, 855 A.2d at 839 (quoting *Hude*, 458 A.2d at 180, 183).

Thus, to determine whether various acts constitute a single criminal episode warranting compulsory joinder, a court must consider two factors: 1) the logical relationship between the acts; and 2) the temporal relationship between the acts. *Commonwealth v. Spotz*, 759 A.2d 1280, 1285 (Pa. 2000). In ascertaining whether a number of statutory offenses are "logically related" to one another, the court should initially inquire as to whether there is a substantial duplication of factual, and/or legal issues presented by the offenses. *Commonwealth v. M.D.P.*, 831 A.2d 714, 718-719 (Pa. Super. 2003).

> If there is duplication, then the offenses are logically related and must be prosecuted at one trial. The mere fact that the additional statutory offenses involve additional issues of law or fact is not sufficient to create a separate criminal episode since the logical relationship test does not require 'an absolute identity of factual backgrounds.'

- 8 -

\* \* \*

> The temporal relationship between criminal acts will be a factor which frequently determines whether the acts are 'logically related.' However, the definition of a 'single criminal episode' should not be limited to acts which are immediately connected in time.... 'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.

*Commonwealth v. Hunter*, 768 A.2d 1136, 1140-1141 (Pa. Super. 2001) (quoting *Hude*, 458 A.2d at 182-183).

"[T]he inquiry as to whether a series of criminal acts constitutes a single criminal episode is fact dependent." *Bracalielly*, 658 A.2d at 757. Furthermore, the single criminal episode analysis essentially considers the totality of the circumstances. *M.D.P.*, 831 A.2d at 719 n.3.

With the preceding tenets in mind, we consider the facts of the case currently before us. Officer Ryan Edsell, a police officer with the Towanda Borough Police Department, provided the following testimony at the hearing on Appellant's motion to dismiss:

> [Commonwealth]: Calling your attention to September seventeen, twenty-fourteen, were you working that day?
>
> [Officer Edsell]: Yes, sir.
>
> [Commonwealth]: In uniform?
>
> [Officer Edsell]: Yes, sir.
>
> [Commonwealth]: In a marked vehicle?
>
> [Officer Edsell]: Yes, sir.

[Commonwealth]:    And were you on patrol that day?

[Officer Edsell]:   Yes.

[Commonwealth]:    And at some point in time, did you receive some information regarding [Appellant]?

[Officer Edsell]:   Yes, I was told that he would be in town.  And – I was informed by Detective Ogden [from Towanda Borough Police Department] that he was to be in town, and that they, he and a [state] trooper were planning an operation with him.

[Commonwealth]:    Okay, and at any point, did you go make an effort to find [Appellant]?

[Officer Edsell]:   I patrolled the area that he was suspected to be in, knowing that he was not a licensed driver in the state of Pennsylvania.

[Commonwealth]:    Okay, and did you find him in that area you were looking?

[Officer Edsell]:   No, I found him in a separate area, uh, the Dandy [mini-mart] on Main Street.

[Commonwealth]:    And how did you come to be around the Dandy?

[Officer Edsell]:   I had not heard from Detective Ogden or Trooper Hutchison if they were successful in the buy, so I broke off and resumed patrol.

N.T., 1/23/15, at 2-3.

On cross-examination, Officer Edsell further explained the sequence of

events as follows:

[Appellant's counsel]:   Officer Edsell, the conversation that led you to be aware that [Appellant] would be present in Towanda Borough, that came to you from Trooper Ogden, or –

- 10 -

[Officer Edsell]: It came to me from Officer Bellows who had heard it from Detective Ogden.

[Appellant's counsel]: All right. And you were made aware that there was the possibility of a drug transaction with [Appellant] in the borough.

[Officer Edsell]: Yes, ma'am.

[Appellant's Counsel]: And I'm assuming that they didn't want you to stop him before he made that transaction, is that correct?

[Officer Edsell]: I would assume so. I didn't know when the transaction was occurring exactly though.

* * *

[Appellant's counsel]: And you knew obviously at [the time of the traffic stop] that the State Police had set up an informant buy from [Appellant]?

[Officer Edsell]: I knew they had attempted to, yes.

[Appellant's counsel]: All right.

[Officer Edsell]: That they were trying to.

[Appellant's counsel]: And this was within a few minutes of the time that this transaction was supposed to have taken place. Is that correct?

[Officer Edsell]: From the time that I was told the transaction was supposed to happen, - to the traffic stop, - it was more than thirty minutes.

[Appellant's counsel]: And when – the traffic stop took place, you were particularly concerned about finding any controlled substances, is that correct?

[Officer Edsell]: Uh, yeah, that's common to be searching for controlled substances.

- 11 -

[Appellant's counsel]: All right. And you knew already that day that there was some question about whether [Appellant] would be in town to sell drugs?

[Officer Edsell]: Yes.

[Appellant's counsel]: And in fact, when you, when you made the stop, is that when you called Officer Hennessey?

[Officer Edsell]: No, it was after the search, I had contacted Officer Hennessey. After I found other substances.

N.T., 1/23/15, at 7-8, 11-12.

Officer Edsell also explained that during the traffic stop, he seized money from Appellant. N.T., 1/23/15, at 13. At the time of the preliminary hearing on the charges related to the traffic stop, Appellant requested the return of his money. *Id.* at 14. Officer Edsell advised Appellant that his money would not be returned due to a state police investigation. *Id.* Officer Edsell provided the following testimony regarding the seized money:

[Appellant's Counsel]: And do you recall [Appellant] asking you whether he could have that money back?

[Officer Edsell]: Yes.

[Appellant's Counsel]: And you told him he couldn't, is that correct?

[Officer Edsell]: I told him the State Police had an investigation or somethin' on it. I don't remember my exact words.

[Appellant's Counsel]: All right.

[Officer Edsell]: I said yes, at the time, he couldn't, because due to an investigation.

[Appellant's Counsel]: So at the time of the preliminary hearing, you knew that the money was related to the

investigation of the traffic stop, of the sale of the controlled substance?

[Officer Edsell]:   I assumed it was related, yes.

[Appellant's Counsel]:  And in fact, when you seized it, you assumed that it was related to that transaction, is that correct?

[Officer Edsell]:   Possibly.  I didn't know if the transaction had occurred or not, though.  So I don't –

[Appellant's Counsel]:   But when you –

[Officer Edsell]:   I wasn't a hundred percent sure, ma'am.

[Appellant's Counsel]:   But when you saw three hundred and eighty dollars, it certainly made you suspicious –

[Officer Edsell]:    - it's safe to assume that, yes.

[Appellant's Cousnel]:  Thank you.  Had you, after seizing that money, you told the State Police that you'd seized it, is that correct?

[Officer Edsell]:   Uh, I think they had contacted me and asked me if I had recovered any money.

[Appellant's Counsel]:  And that was prior to the preliminary hearing on September twenty-four?

[Officer Edsell]:   Yes.

[Appellant's Counsel]:  And they told you not to release it, is that correct?

[Officer Edsell]:   Correct.  They either, custody was transferred, or we didn't release it.  I'm not sure, I'm not the evidence custodian.  But, yes.

N.T., 1/23/15, at 14-15.

Pennsylvania State Police Trooper Michael R. Adams also testified at the hearing.  N.T., 1/23/15, at 16.  Trooper Adams testified that in his

capacity as a narcotics officer, he conducted an investigation involving Appellant on September 17, 2014. *Id.* Trooper Adams provided the following testimony regarding the arranged heroin purchase involving Appellant:

[Commonwealth]:       Now, what was the nature of the investigation on September seventeenth?

[Trooper Adams]:       It was involving a Heroin purchase.

[Commonwealth]:       And was that through an undercover trooper or – a confidential informant?  Or –

[Trooper Adams]:       It was through a confidential informant.

[Commonwealth]:       Okay.  And was Towanda Borough Police involved in that transaction?

[Trooper Adams]:       They were not involved in the transaction, itself.

[Commonwealth]:       And did you make any contact with Towanda Borough Police prior to setting up this transaction with the CI and [Appellant]?

[Trooper Adams]:       Yes, I did.

[Commonwealth]:       And why did you do that?

[Trooper Adams]:       Because the individual was suspended for DUI purposes.

[Commonwealth]:       And what was your concern in that regard?

[Trooper Adams]:       Well, I didn't, - obviously, the individual wasn't supposed to be driving, so uh, - if they happened to see him, to conduct a traffic stop on him.

[Commonwealth]:       Okay.  So was this conversation before your CI transaction or after the transaction?

- 14 -

[Trooper Adams]:      It was before the transaction.

* * *

[Commonwealth]:      And after the transaction was over, did you have any further contact with Towanda Borough?

[Trooper Adams]:      I believe I did later on.  I believe I made contact with Detective Ogden and Officer Bellows.

[Commonwealth]:      Okay.  And what was the purpose of the having contact with them after the transaction?

[Trooper Adams]:      Uh, to see if they were able to make the traffic stop on him.  I was able to learn that they did.

[Commonwealth]:      Now, are you familiar with the term buy bust?

[Trooper Adams]:      Yes, I am.

[Commonwealth]:      Was there any intention of doing that on this occasion?

[Trooper Adams]:      No, there was not.

[Commonwealth]:      And, so why did you want Towanda Borough to stop him, or –

[Trooper Adams]:      The sole purpose was because the individual was suspended for DUI purposes, he shouldn't be driving on the roadway.  So that was the only reason why I contacted Detective Ogden that day, because I knew he was going to be in the borough, and that I knew that the Borough police officers had had contact with him before, knew who he was.

[Commonwealth]:      Well, did you have a legal concern about him driving if you knew he was under suspension?

[Trooper Adams]:      A legal concern?

[Commonwealth]:      Yeah.

[Trooper Adams]: Well, sure, yeah. I mean, if he went out and – after the transaction and then got into an accident, y'know, obviously that wouldn't have looked too good for me that I allowed this.

[Commonwealth]: Now, did you, after [Appellant] left the area, that – well, go back, - did you have another trooper involved with you as far as the CI buy?

[Trooper Adams]: Yeah, - yes, my partner Trooper Hutchison, who's a narcotic officer, as well.

[Commonwealth]: And after the transaction was over, what did the two of you do?

[Trooper Adams]: It was my case, so what I did was follow the informant to a pre-determined location where I met with the informant, while Trooper Hutchison followed [Appellant].

[Commonwealth]: What was the purpose of Trooper Hutchison following [Appellant]?

[Trooper Adams]: Uh, to see where he would go, to see if he was going to meet with any other individuals. Sometimes we follow the individual to see if they meet with, - possibly their supplier, to pay that individual. See where they reside on occasion.

[Commonwealth]: And when did you become aware that Officer Edsell made a stop of [Appellant]?

[Trooper Adams]: I don't recall. It was sometime after I had met with the informant after the transaction is when I learned of it.

* * *

[Commonwealth]: You filed charges October twenty-first, is that correct? Or –

[Trooper Adams]: Yes, I believe that is correct, yes.

[Commonwealth]: Was there ever any intention of filing the charge on the day of the buy?

[Trooper Adams]: There was not. And my reasoning for that is if I file the charges that day immediately after the transaction, [Appellant] would've known who the informant was. This particular informant had other investigations on-going with me, and at that point, I didn't want to compromise those investigations.

N.T., 1/23/15, at 17-20.

On cross-examination, Trooper Adams explained further:

[Appellant's Counsel]: Trooper Adams, you knew that a stop of [Appellant] may in fact yield evidence of the transaction. Is that correct?

[Trooper Adams]: Uh, it's a possibility, yeah, I assumed that.

[Appellant's Counsel]: Whether he was stopped on his way to the transaction or after the transaction?

[Trooper Adams]: Yes, ma'am.

[Appellant's Counsel]: Okay, so if he was stopped on the way to the transaction, you might find the drugs, is that correct? The officer might find the drugs?

[Trooper Adams]: Correct.

[Appellant's Counsel]: And if he was found after the transaction, might find the money?

[Trooper Adams]: Correct.

[Appellant's counsel]: And you know that when there was, you were, you were the investigating officer in this case, correct?

[Trooper Adams]: Yes.

- 17 -

[Appellant's Counsel]: And so it was your decision, along with Trooper Hutchison, to make contact with Towanda Borough to let them know what was going on. Is that correct?

[Trooper Adams]: Yes, ma'am.

[Appellant's Counsel]: And it was your decision to let them know that [Appellant] would be driving without a license, is that correct?

[Trooper Adams]: Yes.

[Appellant's counsel]: And that didn't, your concern about his driving without a license, didn't stop you from setting up a transaction with him, knowing he would drive to it.

[Trooper Adams]: Excuse me?

[Appellant's Counsel]: That concern didn't stop you from setting up the transaction.

[Trooper Adams]: Correct.

[Appellant's counsel]: And in fact, you were aware that day that he had been stopped, is that correct?

[Trooper Adams]: Yes, I had learned about it later in the day. Yes.

[Appellant's counsel]: And you were aware of the fact that day, that he had been placed under arrest.

[Trooper Adams]: Correct.

[Appellant's counsel]: And that his car had been searched.

[Trooper Adams]: And that money had been seized.

[Appellant's counsel]: And you asked that day that, you asked Towanda to check the serial numbers on that money?

[Trooper Adams]: Correct.

[Appellant's counsel]: And you asked that, I don't know, has that money been transferred to evidence at the State Police barracks?

[Trooper Adams]: It has not yet.

[Appellant's counsel]: But you were made aware back on the day of this transaction, that the seized money was in fact found?

[Trooper Adams]: Correct.

[Appellant's counsel]: And you were aware also that drug paraphernalia was found.

[Trooper Adams]: Yes.

* * *

[Appellant's Counsel]: And another piece of evidence that would help support your claim would be recovery of money that was used in the transaction, that you knew was used in the transaction?

[Trooper Adams]: Correct.

* * *

[Appellant's counsel]: . . . The, the drug transaction, the fact that the drug transaction was going to take place was discussed with Towanda police?

[Trooper Adams]: My conversation with Detective Ogden that day was simply, [Appellant] is coming into town, I don't know whether he's alone or if he's going to be with somebody else, probably driving a silver Saturn, and we're going to be doing a drug transaction for Heroin on Second Street. He's DUI-suspended, if your guys happen to see him, stop him. I didn't specify whether – stop him on the way in town, stop him on the way out of town. Simply if they see [Appellant] driving down the roadway to stop him.

[Appellant's counsel]: And Trooper Hutchison, in fact, according to the affidavit of probable cause made Officer Edsell and Officer Bellows aware of [Appellant's] location, is that correct?

- 19 -

[Trooper Adams]: Yes, he had called Mr., or excuse me, Officer Bellows, and told him that he was currently at the Dandy Mini Mart. Now, I don't know whether Officer Edsell was already, had eyes on uh - [Appellant], or not. I have no idea.

[Appellant's counsel]: And in fact, - but you put in your report and I think, in your affidavit of probable cause, Trooper Hutchison made contact with Officer Edsell and Brian Bellows and advised them of [Appellant's] location. Is that correct?

[Trooper Adams]: Correct. Yes.

[Appellant's counsel]: And in your affidavit of probable cause, you indicated that [Appellant] was stopped by Towanda PD, and that it led to them locating and seizing prescription medication, drug paraphernalia, along with some of the currency. Is that correct?

[Trooper Adams]: Yes, ma'am.

[Appellant's counsel]: And so – Towanda Borough was made aware that that was in fact the currency involved in the, in the transaction, is that correct?

[Trooper Adams]: I don't recall if I ever called them back. I asked them to photo-copy the money and fax it to me. I don't remember if I called them back that evening and told them, that that was the currency used. At some point I did tell them.

N.T., 1/23/15, at 21-26.

Relevant to this analysis is the affidavit of probable cause filed by Trooper Adams in support of the subsequent criminal complaint and corresponding arrest warrant. The affidavit of probable cause included a detailed description of the pre-arranged heroin purchase with the CI. Affidavit of Probable Cause, 10/21/14, at 1. The affidavit also included the following information:

Trooper Hutchison was able to follow [Appellant], who was the lone occupant of the Saturn, from Elizabeth Street to the Dandy Mini Mart along Main Street in Towanda Borough. Prior to the deal, we made contact with Towanda Boro. P.D. Det. Al Ogden about possibly doing a drug transaction with [Appellant] today in the Borough. We also advised Ogden that [Appellant's] driving privileges were suspended and if they observed him to traffic stop him. Trooper Hutchison made contact with Officer Ryan Eds[e]ll and Brian Bellows and advised them of [Appellant's] location. [Appellant] was observed meeting with a female known to this Department named Shelby Nonnemacher before he departed the lot. He was then followed onto Merrill Parkway where he was eventually stopped by Towanda Boro. P.D. The stop eventually led to them locating and seizing prescription medication and paraphernalia along with some of this Trooper's photocopied US currency used for the heroin purchase.

*Id.* at 2.

Our review of the evidence supports the conclusion that the events of September 17, 2014, constituted a single criminal episode. The evidence reflects that the state police orchestrated the entire episode involving Appellant. The state police arranged the heroin purchase and, desiring to not stop Appellant immediately after the purchase, enlisted the help of the Towanda Borough police to stop Appellant for a traffic violation after the controlled buy. After the heroin purchase, a state trooper followed Appellant and advised Towanda Borough officers of Appellant's location. Despite assertions to the contrary, the evidence reveals that the state police did not desire to have Appellant stopped by Towanda police solely based on their legal concern regarding Appellant driving while his license was suspended. Indeed, Trooper Adams testified that he knew Appellant's license was suspended before arranging the heroin purchase. This fact did not deter him

from arranging the buy that would likely, and in fact did, cause Appellant to operate a vehicle without a valid license.

The evidence suggests that the state police sought to have Appellant stopped after the controlled buy on the driving under suspension violation so as not to reveal the identity of the CI, but also to ensure recovery of evidence. The stop of Appellant by Towanda Borough police officers, approximately thirty minutes after the arranged purchase, allowed for recovery of the marked currency involved in the heroin purchase. This evidence was pertinent to the state troopers in making a case against Appellant for the heroin sale. As Trooper Adams testified, he called the Towanda Borough officers inquiring as to the recovery of the marked currency and requested that they provide him with that evidence. As the evidence further reflects, when Appellant inquired as to the return of his money at the preliminary hearing on the prior charges, Appellant was told that the money recovered during the stop based on his driving without a license would not be returned to him, as it was part of an investigation by the state police. Thus, it was clear that recovery of the marked currency was of importance to the state police.

Moreover, Trooper Adams included information from the stop conducted by Towanda Borough officers, and recovery of the marked currency, in his affidavit of probable cause supporting the heroin-purchase-related charges against Appellant. In fact, both criminal informations charged Appellant with driving under suspension. Here, the participants,

and ultimately witnesses to the various offenses, are the same and they acted in close concert to apprehend and charge Appellant.

Thus, the totality of circumstances compels the conclusion that this was a single criminal episode. The charges in both informations are logically and temporally related and share common issues of law and fact.

Additionally, we note that here the separate criminal informations were not filed at the same time. Accordingly, Appellant was unable to engage in any procedural maneuvering to improperly obtain the protection of Section 110. Such "procedural maneuvering" was rejected in **Commonwealth v. Gimbara**, 835 A.2d 371 (Pa. Super. 2003). In **Gimbara**, the defendant was charged with speeding and driving under a license suspension. The defendant simultaneously mailed a guilty plea to the charge of speeding, and not guilty to the suspension charge, demanding a jury trial. Prior to this requested trial date, the defendant moved to disqualify the trial on the grounds it contravened Section 110 because he already pled guilty to an offense which arose out of the same criminal episode. This Court rejected that interpretation of the statute and held that Section 110 may not be used to shield a defendant from properly initiated prosecutions through such procedural maneuvering. **Id.** at 377.

Here, there is no evidence that Appellant was aware that the second criminal information would be filed against him five weeks after the incident, and almost an entire month after he entered into a plea bargain in response to previous similar charges. Indeed, Appellant was likely surprised to have

had a subsequent indictment filed against him related to the events of September 17, 2014, after he entered a bargained plea to similar charges on September 24, 2014. As such, it cannot be said that Appellant engaged in any prohibited procedural maneuvering cautioned against in *Gimbara*. Instead, as in *Hude*, both prosecutions contain a substantial duplication of issues of fact and law, which will not only force [Appellant] to "run the gauntlet" repeated times and confront the "awesome resources of the state" successively, but would also sanction "an unjustifiable expenditure of judicial resources." *Hude*, at 180, 183. As the Supreme Court stated in *Hude*, in cases such as this, failure to consolidate these charges will bar successive prosecutions. *Id.*

Having concluded that the second element of the four-pronged test has been met, we consider the applicability of the third prong. Appellant argues that the "appropriate prosecuting officer was aware of the instant offenses at the time of the first conviction." Appellant's Brief at 15. Appellant argues that in this case, Officer Edsell was the appropriate prosecuting officer. *Id.* Because Officer Edsell was aware of all offenses involved during the espisode with Appellant, Appellant asserts that Officer Edsell's awareness was sufficient to meet the third element of the compulsory joinder rule. *Id.*

Conversely, the Commonwealth argues that Officer Edsell had no authority to consolidate the charges with the state police. Commonwealth's Brief at 7. Furthermore, the Commonwealth points out that "Officer Edsell

- 24 -

testified that there was no discussion regarding the possible State Police charges on the date of the preliminary hearing for the charges Officer Edsell filed. ([citing] N.T. 1-23-15 p.7)." ***Id.***

Here, the record reflects that the facts supporting the charges included in the two separate criminal informations were known to all involved officers on September 17, 2014. The evidence reveals that the two police departments worked in close conjunction to apprehend Appellant following the controlled heroin buy. Based on the evidence of record, we are unable to conclude that either department was unaware of the entirety of criminal offenses and potential charges. Furthermore, in detailing the events related to either criminal information, the facts of the other would have become known to any prosecuting official. As noted, Trooper Adams' affidavit of probable cause in support of the current charges included facts related to the pre-arranged heroin purchase; information on the arrangement made with Towanda Borough officers to stop Appellant; the fact that a trooper followed Appellant after the pre-arranged buy and advised the Towanda Borough officers as to Appellant's location for purposes of the stop; information on the stop conducted by Towanda Borough officers; and the fact that the stop by Towanda Borough officers led to the discovery and seizure of prescription medication and drug paraphernalia, along with marked currency used in the heroin purchase. Affidavit of Probable Cause, 10/21/14, at 2.

Additionally, although the Commonwealth expounds upon the fact that Officer Edsell, a Towanda Borough officer, had no authority to consolidate charges with the State Police, the Commonwealth fails to assert that the prosecutors in Bradford County did not have pretrial knowledge of the current charges prior to Appellant's conviction of the former charges. We note that in *Bracalielly*, 658 A.2d at 760, the Supreme Court found that the third element was met where the Commonwealth failed to dispute that prosecutors had pretrial knowledge of pending charges. *Id.*

Based on the evidence of record, we are constrained to conclude that the appropriate prosecuting officer was aware of the criminal conduct, which is the basis for the current charges, before the commencement of the former charges. *See Commonwealth v. George*, 38 A.3d 893, 898-899 (Pa. Super. 2012) (in concluding that the prosecutor was aware of subsequent charges before the commencement of the first trial for purposes of 18 Pa.C.S. § 110 analysis, this Court noted that "the test is not whether [the a]ppellee could be charged, but whether prosecuting officers knew of the offense.") Thus, the third element is also met.

In summary, we conclude that the subsequent heroin-purchase-related charges brought against Appellant by the state police, after entry of Appellant's initial plea, arose from the same criminal episode because they were so logically and temporally interrelated that they essentially involved the same issues of law and fact. We further determine that the appropriate prosecuting officer was aware of the criminal conduct, which is the subject of

the present prosecution, at the time of Appellant's guilty plea on the former charges. Accordingly, 18 Pa.C.S. § 110 was violated by the second indictment, and Appellant is therefore entitled to relief.

The trial court's order is reversed. The indictment currently at issue is quashed and Appellant is discharged.

P.J.E. Bender joins the memorandum.

Judge Platt concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/7/2016