COMMONWEALTH of Pennsylvania,
Appellee,

v.

John LARKINS, Appellant.

Superior Court of Pennsylvania.

Submitted May 12, 2003.
Filed July 28, 2003.

Patrick J. Connors, Public Defender, Media, for appellant.

**1204**

George M. Green, Asst. Dist. Atty., Media, for Com., appellee.

BEFORE: JOHNSON, BENDER and MONTEMURO *, JJ.

### OPINION BY MONTEMURO, J.:

¶ 1 This is an appeal from judgment of sentence of life imprisonment entered following Appellant's conviction of first degree murder after retrial.

¶ 2 In January of 1981, Appellant was convicted by a jury of third degree murder in connection with the shotgun slaying of his wife, Gail Larkins, and of first degree murder for shooting Alfred Huweart, whom Appellant believed to be his wife's paramour. The jury acquitted Appellant of third degree murder and voluntary manslaughter in connection with Huweart's death. The sentences imposed, respectively a life term and a concurrent 14 years' imprisonment were affirmed on direct appeal by this Court, and the Pennsylvania Supreme Court denied *allocatur.* A petition for writ of *habeas corpus* filed in the Federal District Court was similarly unsuccessful.

¶ 3 In 1995, Appellant sought post conviction relief, and appointed counsel filed an amended petition. The trial court agreed that issues raised there were meritorious, and a new trial was granted as to Appellant's conviction for Huweart's death, a decision affirmed by this Court on the Commonwealth's appeal. After retrial, Appellant was again found guilty of first degree murder and sentenced to life imprisonment. This appeal followed.

¶ 4 Three issues are presented which challenge the trial court's refusal to charge the jury on the lesser included offenses of third degree murder and voluntary manslaughter, and assign error to the trial court's imposition of a life sentence to run consecutively to the sentence for Mrs. Larkin's murder as well as to the court's refusal to grant a mistrial based on certain statements by a Commonwealth witness.

¶ 5 Appellant contends that the trial court's refusal to charge on the lesser included offenses of third degree murder and voluntary manslaughter was reversible error because he was entitled to such a charge by the nature of the case, which included a heat of passion defense. In fact, the assertion that such a charge was warranted by the nature of the defense raised is not disputed; the trial court actually charged on heat of passion relative to a determination of malice. However, Appellant's claim involves a matter separate from evidentiary justification for the instruction.

¶ 6 In his 1981 trial, Appellant was specifically acquitted by the jury of both voluntary manslaughter and third degree murder in connection with Huweart's death. Thereafter, in *Commonwealth v. Terry*, 513 Pa. 381, 521 A.2d 398, 410 (1987), our Supreme Court, in the exercise of its supervisory powers, ordered trial judges "to adopt and enforce procedures in all homicide cases which will prevent the recording of a jury verdict of not guilty on lesser included degrees of homicide when the jury returns a guilty verdict on a higher degree." The reason for this decision is illuminated by the situation herein, where "a new trial is granted in a murder case in which the jury has previously rendered an incorrect verdict on the lesser included degrees of homicide." *Id.* at 409. Here, the trial court's refusal to charge on third degree murder and voluntary manslaughter turned not upon the evidentiary propriety of such a charge, but on the court's conclusion that jury consideration of the lesser included crimes at retrial was precluded by double jeopardy. Thus, the most significant aspect of Appellant's argu-

---

* Retired Justice assigned to Superior Court.

ment is that double jeopardy is a waivable defense, and that he was denied the opportunity to waive it, with the result that he was subjected to the jury's choice "between first degree murder and the complete acquittal of a man who had admittedly shot two people." (Appellant's Brief at 25).

18 Pa.C.S.A. § 109(1) provides as follows:

When a prosecution is for a violation of the same statutes and is based on the same facts as a former prosecution, it is barred by such former prosecution under the following circumstances:

(1) The former prosecution resulted in an acquittal. There is an acquittal if the prosecution resulted in a finding of not guilty by the trier of fact or in a determination that there was insufficient evidence to warrant a conviction. A finding of guilty of a lesser included offense is an acquittal of a greater inclusive offense, although the conviction is subsequently set aside.

See also *Commonwealth v. Bracalielly,* 540 Pa. 460, 658 A.2d 755 (1995).

■ ¶ 7 Appellant argues that a knowing and intelligent waiver of double jeopardy protections is theoretically possible. *Commonwealth v. Johnson,* 319 Pa.Super. 463, 466 A.2d 636, 641 (1983). However, the trial court, extrapolating from our Supreme Court's decision in *Commonwealth v. Tharp,* 562 Pa. 231, 754 A.2d 1251, 1253 (2000), concluded otherwise. In *Tharp* the Court considered whether defendants possessed a right to a bench trial equivalent to the right to be tried by a jury, and determined that no such right exists, although the right to a jury may be waived. See also *Commonwealth v. White,* 818 A.2d 555 (Pa.Super.2003). The question then becomes whether the same analysis resolves the question here, that is, whether the right to be free from being placed twice in jeopardy may be voluntarily relinquished. We find that our Supreme Court's decision in *Commonwealth v. Gibbons,* 567 Pa. 24, 784 A.2d 776 (2001), renders the matter moot. In that case, albeit under entirely different circumstances, the Court in considering the effects of 18 Pa.C.S.A. § 109(1), observed that "[t]his rule barring retrial is confined to cases where the prosecution's failure to meet its burden is clear and a second trial would merely afford the prosecution another opportunity to supply evidence that it failed to put forth in the first proceeding." *Gibbons, supra* at 778 (citations omitted). The rationale is that "[t]his prohibition prevents the State from honing its trial strategies and perfecting its evidence through successive attempts at conviction. Repeated prosecutorial sallies would unfairly burden the defendant and create a risk of conviction through sheer governmental perseverance." *Id.* (citing *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957)).

¶ 8 The application of this reasoning is made even more cogent by the recognition in *Terry* that jury verdicts on lesser included offenses where a guilty verdict is reached on the inclusive offense are incorrect. Moreover, here there is no evidentiary insufficiency to preclude retrial under *Gibbons,* nor does the question of successive prosecutions motivated by governmental intransigency ever arise. Thus, we conclude that the trial court's refusal to charge on lesser included offenses, given the impropriety of the prior jury verdicts on such offenses, as well as refinement of the double jeopardy clause in *Tharp,* was error. Further, because, in fact, preclusive double jeopardy is not involved here, waiver was possible.

■ ¶ 9 However, the record rebuts Appellant's claim that no opportunity for waiver was available. In pretrial motions, Appellant raised double jeopardy as a bar

to retrial, citing prosecutorial misconduct. Also at this point in the proceedings Appellant presented his request that a jury charge be given on the lesser included offenses. The argument advanced was that a guilty verdict on either third degree murder or voluntary manslaughter "would be a tad amount [sic] to a finding of not guilty. And that would—the case would end there." (N.T., 11/9/00, at 16). Nowhere in that discussion did the possibility of Appellant's waiving his double jeopardy rights, and submitting himself to the hazard of conviction on the lesser included offenses, arise. Nor was the matter mentioned during the interrogation of trial counsel during the hearing on post trial motions, which included both allegations of trial court error for refusing to give the charge, as well as counsel's ineffectiveness for failure to raise the waiver of double jeopardy as an option.[1] In fact, at the hearing, the discussion on this point was limited to an exploration of whether the trial court's refusal to give the requested charge had been waived. (N.T., 8/9/01, at 31–32).

¶ 10 The matter of counsel's failure to advance in the trial court Appellant's purported willingness to waive double jeopardy rights has been repeated here. And, as noted, although there was an ineffectiveness hearing, it did not cover that particular claim. Thus, with no on-the-record exploration of counsel's motives, we may not address the merits. Rather, we are compelled by our Supreme Court's ruling in *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), to dismiss the issue of an alleged defect in both trial and appellate counsel's representation without prejudice to Appellant's right to raise it on collateral appeal.

¶ 11 Appellant's sentencing claim rests on the assertion that imposition of a life sentence for his conviction in the Huweart slaying consecutive to the expired 7 to 14 year term for third degree murder was barred by 42 Pa.C.S.A. § 9760, Credit for Time Served, which specifies that credit must be applied to all time spent in custody for the same offense or for another offense based on the same act or acts. Appellant contends that, contrary to the provisions of the statute, a consecutive life sentence "fails to give [Appellant] credit for the service and completion of the third degree murder sentence." (Appellant's Brief at 28). How this is so Appellant neglects to explain, since as he points out, the 14 year term has expired, and as the trial court notes, "the issue of credit for time served in the context of a life sentence bears little meaning." (Trial Ct. Op. at 10). In fact, the statute is irrelevant to Appellant's claim.

¶ 12 However, again the thrust of the issue here is not that which is originally advanced. Rather, recognizing that "the importance of this issue [consecutive sentences] may not be readily apparent since [a] life term means that [Appellant] can never be paroled," (Appellant's Brief at 30), Appellant bases his concern on the tentative contention that "it is conceivable that an existing sentence for the killing of Gail Larkins may hinder a future attempt to gain a pardon from the Board of Pardons." *Id.* He relies for support on this Court's decision in *Commonwealth v. Button*, 332 Pa.Super. 239, 481 A.2d 342, 346 (1984), in which we stated that "consecutive life sentences would have the objective effect of providing the Board [of Pardons] with the results of multiple convictions in computing a prisoner's eligibility for re-

---

1. Only Appellant's Brief in Support of Post Sentence Motion and Supplemental Post Sentence Motion is included in the record, not the motions themselves. Our resolution of the issue is unaffected by this omission.

lease and operate subjectively to express the court's conclusion as to the severity of penalty merited."

¶ 13 First, however, Appellant was not sentenced to consecutive life terms. Second, as he also concedes, decisions such as the order in which sentences are to be served are within the discretion of the trial court, (Appellant's Brief at 16, citing 42 Pa.C.S.A. § 9757), which clearly stated its "conclusion as to the severity of penalty merited." *Button, supra.* Moreover, pardon or commutation of a life sentence is exclusively within the administrative purview of the Board of Probation and Parole. *Id.* Appellant also expresses doubt whether he would have to seek pardon only for the Huweart killing, or for the "other case," accordingly querying whether the sequence of sentences would even "be significant" to the Board. (Appellant's Brief at 30). Thus the substance of his argument, "that the consecutive nature of the present life sentence should be vacated," (Appellant's Brief at 30), is entirely dependent on admitted uncertainty as to the possible effect of a consecutive sentence on a speculative clemency request. It therefore falls to persuade us that the court erred in imposing consecutive sentences.

¶ 14 Finally, Appellant argues that the trial court erred in denying his mistrial motion following a certain statement by Commonwealth witness Diane Rowlands, the sister of Appellant's slain wife. The testimony consisted of a hearsay statement, elicited during cross-examination, that Huweart reported to her Appellant's having fired a shot at him. Counsel moved for a mistrial, which the trial court denied, instead offering a curative instruction directing the jury to ignore the statement, and questioning its having actually been made. As the trial court correctly points out, the resolution of a motion for mistrial is a decision left to the discretion of the trial judge, who need only grant the motion "where the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial." *Commonwealth v. Fletcher,* 561 Pa. 266, 750 A.2d 261, 269 (2000) (citations omitted). Moreover, "[a] mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice." *Commonwealth v. Gillen,* 798 A.2d 225, 231 (Pa.Super.2002) (citations and quotation marks omitted), and "the jury is presumed to have followed the court's instructions." *Fletcher, supra,* at 270. We find the court's instructions here adequate to neutralize whatever prejudicial effect, if any, the witness' statement may have caused, and that Appellant's motion for mistrial was properly denied.

¶ 15 Judgment of sentence affirmed.