J. A15038/18

2018 PA Super 351

COMMONWEALTH OF PENNSYLVANIA,   :      IN THE SUPERIOR COURT OF
:           PENNSYLVANIA
Appellant   :
:
v.          :      No. 1785 MDA 2017
:
WILLIAM R. LANDIS, JR.      :

Appeal from the Order Entered October 24, 2017,
in the Court of Common Pleas of Berks County
Criminal Division at No. CP-06-CR-0005405-2009

BEFORE:  PANELLA, J., MURRAY, J., AND FORD ELLIOTT, P.J.E.

OPINION BY FORD ELLIOTT, P.J.E.:         **FILED DECEMBER 24, 2018**

The Commonwealth appeals from the October 24, 2017 order denying

its petition to reinstate Counts 2 through 4 (third-degree murder and

aggravated assault)[1] of the underlying criminal information, on the basis it

was barred on retrial by double jeopardy or laches.  After careful review, we

are constrained to affirm.

A prior panel of this court summarized the relevant facts of this case as

follows:

> On October 28, 2009, at approximately 9:20 p.m.,
> Berks County Radio dispatched Spring Township
> Police officers to the residence of [William R.
> Landis, Jr. (hereinafter, "Landis")] to investigate a
> possible shooting.  A man had called to report that a
> woman had been shot.  It was later discovered that
> the caller was [Landis].  [Landis'] wife, Sharon Landis,

---

[1] 18 Pa.C.S.A. §§ 2502(c), 2702(a)(1), and 2702(a)(4), respectively.

was found dead from a gunshot wound to the head on the second floor of the residence. The victim also had other nonfatal gunshot wounds on her body. While performing a clearing operation of the residence, officers discovered [Landis] barricaded in the basement. [Landis] had a knife and two guns in his possession and threatened to shoot anyone who came down into the basement. While in the basement, [Landis] made several telephone calls to family and friends and mentioned his dead wife. [Landis] became increasingly intoxicated as the evening progressed. The Berks County Emergency Response Team was called to the scene, and [Landis] was eventually taken into custody after several hours had elapsed.

**Commonwealth v. Landis**, 102 A.3d 528 (Pa.Super. 2014) (unpublished

memorandum at *1, citing trial court opinion, 8/2/13 at 1-2).

The trial court summarized the procedural history of this case as follows:

The Commonwealth charged [Landis] with one count of First Degree Murder (Count 1), one count of Third Degree Murder (Count 2), two counts of Aggravated Assault (Counts 3 and 4), Assault on a Law Enforcement Officer (Count 5), seven counts of Aggravated Assault (Counts 6 to 10, 14, 17), four counts of Simple Assault (Counts 11, 12, 15, 18), eleven counts of Reckless Endangerment (Counts 13, 16, 20 to 28), one count of Terroristic Threats (Count 19), and two counts of Possessing an Instrument of Crime (Counts 29-30).[2] [Landis] moved to sever Counts 5 through 30, which involved the standoff between the police and [Landis] during the period the police officers were negotiating [Landis'] surrender when [Landis] was in the basement. This court granted [Landis'] motion to sever the charges.[3]

---

[2] 18 Pa.C.S.A. §§ 2502(a), 2502(c), 2702.1, 2702, 2701, 2705, 2706, and 907, respectively.

[3] Landis proceeded to a jury trial on April 1, 2013.

> At the trial that ended on April 5, 2013, the jury found [Landis] guilty of only Count 1, Murder in the First Degree. The jury found [Landis] not guilty of Count 2, Murder in the Third Degree, Count 3, Voluntary Manslaughter, and Count 4, Involuntary Manslaughter. Prior to the closing arguments, the counts for Voluntary Manslaughter and Involuntary Manslaughter replaced the two counts of Aggravated Assault. This court polled the jury, and . . . recorded the verdicts.
>
> The Commonwealth did not file any post-trial motion to correct the Verdict as permitted by the Pennsylvania Rules of Criminal Procedure.[4] At [Landis'] sentencing, the Commonwealth agreed to withdraw Counts 5 through 30 with the understanding that if [Landis'] first[-]degree murder conviction was overturned, the Commonwealth would be able to reinstate those charges.

Trial court opinion, 1/26/18 at 1-2.

On June 10, 2013, Landis filed a timely notice of appeal. On April 10, 2014, a panel of this court affirmed Landis' judgment of sentence, and no further review was sought with our supreme court. **See Landis**, 102 A.3d 528. On December 22, 2014, Landis filed a timely petition pursuant to the Post Conviction Relief Act ("PCRA"),[5] raising multiple claims of trial and appellate counsels' ineffectiveness. (**See** PCRA petition, 12/22/14, at 3-4.) On June 29 and 30, 2015, the PCRA court held evidentiary hearings on this matter. Thereafter, on December 18, 2015, the PCRA court entered an

---

[4] On May 15, 2013, the trial court sentenced Landis to a mandatory term of life imprisonment.

[5] 42 Pa.C.S.A. §§ 9541-9546.

opinion and order granting Landis a new trial based on trial counsel's failure to call expert witness, Dr. Larry A. Rotenberg, to testify in support of a diminished capacity defense. (PCRA opinion, 12/18/15 at 10-17.) The Commonwealth filed a notice of appeal that same day. On November 30, 2016, a panel of this court affirmed the PCRA court's order and our supreme court denied the Commonwealth's petition for allowance of appeal on July 24, 2017. *See Commonwealth v. Landis*, 159 A.3d 603 (Pa.Super. 2016) (unpublished memorandum), *appeal denied*, 169 A.3d 1059 (Pa. 2017).

Thereafter, on August 28, 2017, the Commonwealth filed a petition to reinstate Counts 2 through 4 of the underlying criminal information, third-degree murder and aggravated assault. As noted, the trial court entered an order on October 24, 2017 denying the Commonwealth's petition. The Commonwealth filed a timely notice of appeal on November 21, 2017. On December 1, 2017, the trial court directed the Commonwealth to file a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b). The Commonwealth filed a timely Rule 1925(b) statement on December 6, 2017. On January 26, 2018, the trial court filed its Rule 1925(a) opinion.

The Commonwealth raises the following issues for our review:

> [1.] Did the trial court err by ruling that reinstatement of the charge of third-degree murder is barred on retrial by double jeopardy and/or laches?

- 4 -

> [2.] Alternatively, did the trial court err by ruling that [Landis] is permitted to present a diminished capacity defense where the Commonwealth is barred from retrying [Landis] on the charge of third-degree murder?

Appellant's brief at 5 (full capitalization omitted). The Commonwealth has abandoned its claim that the trial court erred in determining that the reinstatement of the aggravated assault charges is barred by laches. (**See** **id.** at n.1).

> An appeal grounded in double jeopardy raises a question of constitutional law. This court's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is **de novo**. To the extent that the factual findings of the trial court impact its double jeopardy ruling, we apply a more deferential standard of review to those findings:
>
>> Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record.

**Commonwealth v. Kearns**, 70 A.3d 881, 884 (Pa.Super. 2013) (citations omitted), **appeal denied**, 84 A.3d 1063 (Pa. 2014).

The Commonwealth first argues that the trial court erred in concluding that double jeopardy bars the reinstatement of the third-degree murder charge on retrial because the underlying verdict was "incorrect" as a matter of law. (Commonwealth's brief at 16.) The Commonwealth avers that,

> [a]lthough the jury in the first trial returned a verdict of not guilty to the third-degree murder charge, the jury found [Landis] guilty of first-degree murder, an offense which contains all the elements of third-degree murder with the added element of specific intent to kill[.]

*Id.* at 21.

The Commonwealth maintains that this is not a case where it is simply seeking "another opportunity to supply evidence that it failed to put forth previously[.]" (*Id.*) Rather, the Commonwealth contends that it has already proven "all the elements of third-degree murder as evidenced by the verdict." (*Id.* at 14, 18.) Thus, "double jeopardy should not bar reinstatement of third-degree murder." (*Id.*) In support of this conclusion, the Commonwealth relies on *Commonwealth v. Larkins*, 829 A.2d 1203 (Pa.Super. 2003), *appeal denied*, 870 A.2d 321 (Pa. 2005).

Upon review, we find that *Larkins* is distinguishable from the instant matter and that the Commonwealth's reliance on it is misplaced. *Larkins* involved a defendant who was convicted of, *inter alia*, the first-degree murder of his wife's alleged paramour and acquitted of the lesser-included offenses of third-degree murder and voluntary manslaughter of said paramour. *Larkins*, 829 A.2d at 1203. Larkins' direct appeal was unsuccessful, but he was granted a new trial after he sought post-conviction relief. *Id.* at 1204. At his retrial for first-degree murder, Larkins requested an additional jury instruction on third-degree murder and voluntary manslaughter. *Id.* The trial court denied Larkins' request on grounds that it

would put him twice in jeopardy for charges of which he had been acquitted. *Id.* Larkins appealed a second time, arguing that the jury should have been instructed on the lesser charges at his second trial. *Id.* The *Larkins* court recognized that the double jeopardy clauses did not bar the jury from being instructed on the lesser-included offenses because waiver of double jeopardy protections is theoretically possible, but held that Larkins had failed to preserve the argument that he could waive double jeopardy. *Id.* at 1205-1206.

We recognize that the holding in *Larkins* implies that a defendant may waive his double jeopardy rights in situations where the protections actually harm his or her interests. *See id.* at 1203 (opining that defendant could waive double jeopardy in order to have jury instructed on lesser offense as to which he had previously been acquitted). However, unlike *Larkins*, this case does not present a scenario in which Landis would benefit from waiving his double jeopardy rights, and Landis did not voluntarily attempt to do so merely by filing a petition for relief pursuant to the PCRA.

On the contrary, we find that the reinstatement of the third-degree murder charge in this case is clearly barred by double jeopardy. "The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Article 1, § 10 of the Pennsylvania Constitution protect a defendant from repeated criminal prosecutions for the same offense." *Commonwealth v. Adams*, 177 A.3d 359, 371 (Pa.Super. 2017) (citation omitted). Our supreme

court has summarized the rationale behind the protections afforded by the

Double Jeopardy Clause as follows:

> The principle that an acquittal is an absolute bar to any subsequent prosecution for the same offense . . . is fundamental and is part of the fabric which forms the basis of the double jeopardy prohibition. American double jeopardy jurisprudence affords the utmost finality to acquittals. In **Commonwealth v. Tillman**, [461 A.2d 795 (Pa. 1983)], this Court explained the finality that follows an acquittal as follows:
>
>> [T]he Supreme Court of the United States has recently observed [that] the fact[-]finder in a criminal case has traditionally been permitted to enter an unassailable but unreasonable verdict of not guilty. [W]e necessarily accord absolute finality to a jury's verdict of acquittal—no matter how erroneous its decision. Thus, where a defendant has been found not guilty at trial, he may not be retried on the same offense, even if the legal rulings underlying the acquittal were erroneous. [T]he law attaches particular significance to an acquittal. To permit a second trial after an acquittal, however mistaken the acquittal may have been, would present an unacceptably high risk that the Government, with its vastly superior resources, might wear down the defendant so that even though innocent, he may be found guilty. So, too, no prosecution appeal lies from a not guilty verdict, even where that verdict is based upon an egregiously erroneous foundation.
>
> [**Id.** at 767-797.]

*Commonwealth v. Ball*, 146 A.3d 755, 763-764 (Pa. 2016) (additional citations and quotation marks omitted; some brackets in original).

Here, Landis was tried before a jury on first-degree murder, third-degree murder, voluntary manslaughter, and involuntary manslaughter. The jury found Landis guilty of first-degree murder but acquitted him of the remaining charges, including third-degree murder. (Notes of testimony, 4/1-5/13 at 1176.) The jury's verdict was accepted and properly recorded after the jury was polled at the request of Landis' counsel. (*Id.* at 1176-1179, 1181.) *See also* Pa.R.Crim.P. 648(D), (G). The Commonwealth never objected to the verdict or its recordation, and it failed to file a post-trial motion challenging the verdict. Once a verdict has been recorded, it is generally not subject to alteration or correction, and the protections afforded by double jeopardy attach. *See Commonwealth v. McDaniels*, 886 A.2d 682, 686-687 (Pa.Super. 2005) (stating, "[i]t cannot be disputed that a jury's recorded verdict is inviolate. The established rule is that the verdict as recorded is the verdict of the jury and the latter shall not be permitted to impeach or to alter or amend it after their separation or discharge[]" (citation and internal quotation marks omitted)), *appeal denied*, 903 A.2d 537 (Pa. 2006), *cert. denied*, 549 U.S. 960 (2006); *see also Commonwealth v. Petteway*, 847 A.2d 713, 717 (Pa.Super. 2004) (holding that a defendant's constitutional protection against double jeopardy was violated when trial judge commanded the jury to return to deliberations after it rendered inconsistent verdicts).

We emphasize that "inconsistent verdicts, while often perplexing, are not considered mistakes and do not constitute a basis for reversal." **Petteway**, 847 A.2d at 718 (citations omitted). Rather, "[t]he rationale for allowing inconsistent verdicts is that it is the jury's sole prerogative to decide on which counts to convict in order to provide a defendant with sufficient punishment." **Kearns**, 907 A.2d at 659 n.10 (citations omitted). "When an acquittal on one count in an indictment is inconsistent with a conviction on a second count, the court looks upon the acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity." **Petteway**, 847 A.2d at 718 (citations and internal quotations omitted). Based on the foregoing, the Commonwealth's claim that double jeopardy did not bar reinstatement of the third-degree murder charge must fail.[6]

In an alternative argument, the Commonwealth next contends that Landis should be barred from presenting a diminished capacity defense on

---

[6] In reaching this decision, we are cognizant of our supreme court's decision in **Commonwealth v. Terry**, 521 A.2d 398 (Pa. 1987), **cert. denied**, 482 U.S. 920 (1987), **overruled on other grounds**, **Commonwealth v. Frey**, 554 A.2d 27 (Pa. 1989), **cert. denied**, 494 U.S. 1038 (1990). In that case, our supreme court, in an exercise of its supervisory powers, expressly disapproved of the practice of acquitting a defendant of lesser degrees of murder when the defendant is convicted of the higher degree. **See Terry**, 521 A.2d at 410 (ordering trial judges "to adopt and enforce procedures in all homicide cases which will prevent the recording of a jury verdict of not guilty on lesser included degrees of homicide when the jury returns a guilty verdict on a higher degree[]"). Instantly, neither the trial court nor the district attorney followed the direction from our supreme court; and as a result, the Commonwealth has no recourse.

retrial absent an express waiver of his double jeopardy protections. (Commonwealth's brief at 22.) In support of this contention, the Commonwealth maintains that,

> [t]he affirmative defense of diminished capacity due to voluntary intoxication requires that a criminal defendant concede liability for third-degree murder. By pursuing a diminished capacity defense, [Landis] is asking the jury to find him guilty of third-degree murder. However, by asserting that third-degree murder is barred by double jeopardy, [Landis] endeavors to circumvent the requirements for advancing a defense of diminished capacity.

*Id.* at 14-15.

Our supreme court has long recognized that the question of "whether a defendant has established that his faculties and sensibilities were so overwhelmed with drugs so that he could not form the specific intent to kill is a question of fact solely within the province of the jury[.]" ***Commonwealth v. VanDivner***, 962 A.2d 1170, 1177 (Pa. 2009) (citations and internal quotation marks omitted), ***cert. denied***, 559 U.S. 1038 (2010). "[T]he defense of diminished capacity is a matter for a jury to believe or disbelieve as it sees fit." *Id.* (citation omitted).

Upon careful review, we find that discussion of this particular issue would be premature at this point and defer to the trial court on retrial as to whether the parties may present evidence on Landis' diminished capacity and the extent to which the jury should be instructed as to its admissibility. A new

trial was granted on the basis of the ineffectiveness of original trial counsel. This ruling does not predispose any evidentiary issue on retrial.

For all the foregoing reasons, we affirm the trial court's October 24, 2017 order denying the Commonwealth's petition to reinstate Counts 2 through 4 (third-degree murder and aggravated assault) of the underlying criminal information.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/24/2018</u>