J-S45015-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF<br>:        PENNSYLVANIA<br>: |
| v. | :<br>:<br>:<br>: |
| JOSE CEFERINO TEJERAS | :<br>: |
| Appellant | : No. 1001 MDA 2025 |

Appeal from the PCRA Order Entered July 8, 2025
In the Court of Common Pleas of Berks County
Criminal Division at No: CP-06-CR-0000072-2021

BEFORE: STABILE, J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY STABILE, J.:           **FILED: MAY 18, 2026**

Appellant, Jose Ceferino Tejeras, appeals from an order denying his petition for relief under the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546. We affirm.

The following evidence was adduced during trial:

On September 28, 2020, Jose Lopez ("Lopez") was operating his vehicle in the 500 block of Locust Street, Reading, Berks County[.] While in his vehicle, Lopez observed [Appellant] standing near the home of Yesenia Salva, [Appellant's] sister and the mother of Lopez's three children.[1] [Appellant] was in possession of a large, black bag. As Lopez approached [Appellant's] location, [Appellant] disappeared between some cars and then there was a gunshot. After Lopez drove through the 500 block of Locust Street, he noticed a bullet hole in the driver's side door of his

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The record reflects that Salva was Lopez's ex-girlfriend and the mother of his three children. Lopez and Salva had an abusive relationship. Appellant is Salva's brother, and Appellant and Lopez had an argument two months before the date of the shooting because Appellant struck Lopez's 10-year-old son.

vehicle. Lopez also sustained a gunshot injury to his right leg which required medical treatment.

Lopez did not point a gun at [Appellant] or threaten him with a gun as he drove by. Law enforcement responded to the scene and discovered a rifle shell casing between two vehicles in that block. An additional casing was located in a nearby alley. During their investigation, law enforcement officers recovered surveillance video from the area. One of those videos was from the morning of the shooting and showed [Appellant] in possession of a soft rifle case. Two additional videos captured the shooting. Those videos showed [Appellant] retrieving a firearm and hiding between two vehicles in the 500 block of Locust Street as Lopez's vehicle approached [Appellant's] location. As Lopez drove by [Appellant], a loud bang can be heard on [one of] the video[s]. The video showed that Lopez did not point a gun at [Appellant] as he went by him. There were also pictures taken of Lopez's vehicle which showed that the exterior and interior bullet holes were consistent with the bullet entering the vehicle from the outside. The police [n]ever locate[d] the gun used by [Appellant].

On December 29, 2020, [Appellant] was interviewed by the police regarding the incident that occurred on September 28, 2020. [Appellant] was read his ***Miranda*** warnings and agreed to speak with the officers. During the interview, [Appellant] stated that he felt as though Lopez was trying to intimidate him. [Appellant] admitted that he saw Lopez's vehicle driving by and that he crouched down near his sister's house and took one shot at Lopez's vehicle with an AK-47 rifle. He said that he had no regrets and refused to be intimidated. When asked about the current location of the AK-47 rifle, [Appellant] told the police that he returned the weapon to its owner. At trial, [Appellant] testified and admitted to shooting at Lopez's vehicle and stated that he lied to the police about giving the firearm to a friend. He also admitted that Lopez did not point a firearm out of his window as he drove by.

Trial Court Opinion, 8/1/23, at 2-4 (citations omitted; cleaned up).

On November 7, 2022, following trial, a jury found Appellant guilty of aggravated assault (two counts), possessing an instrument of crime, recklessly endangering another person, persons not to possess firearms and

simple assault (two counts). On February 9, 2023, the trial court sentenced Appellant to an aggregate term of 15 years to 30 years' imprisonment (7½-15 years' imprisonment for aggravated assault and a consecutive term of 7½-15 years' imprisonment for persons not to possess firearms). The court entered concurrent sentences for the remaining convictions. On February 14, 2023, the court amended its judgment of sentence to provide that it was to run concurrent to a sentence which Appellant was serving in another case.

On February 23, 2023, while represented by trial counsel, Appellant filed a *pro se* post-sentence motion. The trial court declined to address this motion because Appellant was represented by counsel.[2]

On March 3, 2023, Appellant filed a *pro se* PCRA petition. On March 13, 2023, the court appointed PCRA counsel. On the same date, trial counsel filed a notice of direct appeal. Trial counsel subsequently filed a motion to withdraw, which the trial court granted. PCRA counsel then requested to withdraw Appellant's PCRA petition so that Appellant could proceed with his direct appeal. The court granted this motion and appointed PCRA counsel as direct appeal counsel.

On June 6, 2024, this Court affirmed Appellant's judgment of sentence on direct appeal. On January 6, 2025, our Supreme Court denied Appellant's petition for allowance of appeal.

---

[2] This decision was correct. **See Commonwealth v. Thompson**, 333 A.3d 461, 468 n.5 (Pa. Super. 2025) (defendant's *pro se* filings were legal nullities because he was represented by counsel, and hybrid representation was not permitted).

On April 14, 2025, Appellant filed a timely *pro se* PCRA petition. The PCRA court appointed counsel, who filed a ***Turner***/***Finley***[3] "no merit" letter along with a request to withdraw as counsel. On June 17, 2025, the PCRA court granted counsel leave to withdraw and issued a notice of intent to dismiss Appellant's petition without a hearing. On July 7, 2025, Appellant filed objections to the notice of intent. On July 8, 2025, the court dismissed the petition. This timely appeal followed.

In this appeal, Appellant, proceeding *pro se*, raises the following issues:

1. Did the lower court err in dismissing the petition without a hearing where [Appellant] made a meritorious argument that trial counsel was ineffective for failing to call the E.R. doctor as a witness to contradict the state's main witness's testimony?

2. Did the lower court err in dismissing the petition without a hearing where [Appellant] made a meritorious argument that trial and appellate counsel were ineffective for failing to preserve and litigate the denial of a mistrial when the prosecutor introduced prior bad acts evidence?

3. Did the lower court err in dismissing the petition without a hearing where [Appellant] made a meritorious argument that trial Counsel was ineffective for failing to litigate the trial court's admission of opinion testimony by a lay witness?

4. Did the lower court err in dismissing the petition without a hearing where [Appellant] made a meritorious argument that trial counsel was ineffective for failing to investigate and present the cell phone records of the victim to impeach his testimony?

Appellant's Brief at 3.

---

[3] ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988).

- 4 -

In reviewing the denial of PCRA relief, this Court examines whether the PCRA court's determinations are supported by the record and free from legal error. **Commonwealth v. Diaz**, 183 A.3d 417, 421 (Pa. Super. 2018). The reviewing court is not bound by the PCRA court's rationale for dismissing the petition and may affirm for any reason supported by the record. **Id.** The law presumes that counsel was effective, and a petitioner claiming ineffectiveness bears the burden of proving otherwise. **Commonwealth v. Orlando**, 156 A.3d 1274, 1281 (Pa. Super. 2017). To overcome this presumption, a petitioner must plead and prove by a preponderance of the evidence that: (1) the underlying claim has arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's action or inaction. **Id.** Our Supreme Court has explained, "Prejudice in the context of ineffective assistance of counsel means demonstrating that there is a reasonable probability, but for counsel's error, the outcome of the proceedings would have been different." **Commonwealth v. Cox**, 983 A.2d 666, 678 (Pa. 2009). If a petitioner fails to satisfy any one of the three prongs, the claim fails. **Orlando**, 156 A.3d at 1281.

Appellant alleges that the PCRA court erred in finding that he failed to prove that trial counsel was ineffective for failing to call the emergency room doctor who treated Lopez concerning the nature of his leg injuries. To prove this claim, Appellant must prove (1) that the witness existed, (2) the witness was available, (3) trial counsel should have known that the witness existed,

(4) the witness was willing to testify for Appellant, and (5) the absence of this testimony prejudiced Appellant's case. *See Commonwealth v. Crawley*, 663 A.2d 676, 679-680 (Pa. 1995).

The PCRA court properly denied relief on this issue. Nothing in the record indicates that this doctor was willing and available to testify at trial. Moreover, although Appellant complains that the doctor could have testified regarding the nature of Lopez's injury and alternate possible causes, Appellant told police that he crouched down in front near his sister's house and shot at Lopez's vehicle with an AK-47 as it passed by. Two additional videos captured the shooting. They showed Appellant retrieving a firearm and hiding between two vehicles in the 500 block of Locust Street as Lopez's vehicle approached Appellant's location. As Lopez drove by Appellant, a loud bang can be heard on one of the videos. Thus, the cause of Lopez's injury is readily apparent from Appellant's confession. Any opinion from the doctor regarding alternate possible causes of Lopez's would not have prejudiced Appellant's case.

Next, Appellant argues that counsel on direct appeal was ineffective for failing to litigate the denial of Appellant's motion for a mistrial. During the testimony of police investigator Sheller, the Commonwealth asked if his investigation revealed that Appellant used any other names. In response, the witness stated that "records were pulled," including "records and previous police contacts." JT at 299. Trial counsel objected and moved for a mistrial, arguing that this testimony improperly inferred that Appellant had a prior

criminal record. *Id.* at 299-300. After a lengthy sidebar discussion, the trial court issued the following cautionary instruction:

> Members of the jury, Criminal Investigator Sheller responded that he pulled records in prior police contacts of the defendant in response to the Commonwealth's question of whether he knew if the defendant – whether he knew the defendant by any other name. You are not to infer that records or police contact is any indication of prior criminal record. Police will pull driving records for a number of reasons that are not relevant in this case.

*Id.* at 308. The questioning moved to another subject.

The Rules of Criminal Procedure permit the defendant to move for a mistrial when a prejudicial event occurs. *See* Pa.R.Crim.P. 605(B). Every unwise or irrelevant remark made in the course of a trial by a judge, a witness, or counsel, however,

> does not compel the granting of a new trial. A new trial is required when the remark is prejudicial; that is, when it is of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial. Moreover, it must be determined from all the circumstances whether a remark has a prejudicial effect; there is no fixed rule applicable to every case. An accepted guide in determining prejudicial effect is that, if the remark may be said with fair assurance to have had but a slight effect upon the jury, if any at all, and one is not left in doubt that it had no substantial influence in the case, it will not vitiate an otherwise fair trial.

*Commonwealth v. Sullivan*, 820 A.2d 795, 800 (Pa. Super. 2003). A mistrial is not necessary when cautionary instructions are sufficient to negate the prejudicial effect of the event. *See Commonwealth v. Larkins*, 829 A.2d 1203, 1207 (Pa. Super. 2003). A mistrial should only be granted when

the incident has the unavoidable effect of denying the defendant a fair trial. *Commonwealth v. Montalvo*, 641 A.2d 1176, 1188 (Pa. Super. 1994).

Appellant's claim of ineffectiveness lacks arguable merit. The trial court properly denied a mistrial because the witness made no specific reference to prior criminal activity. Additionally, to the extent that the jury could infer that his testimony indicated prior negative contacts with police, the court's cautionary instruction directed the jury not to make such an inference. The jury is presumed to follow the trial court's instructions, *see Commonwealth v. Baker*, 614 A.2d 663, 672 (Pa. 1992), and nothing in the record indicates that the jury failed to follow the cautionary instruction here.

Next, Appellant argues that appellate counsel was ineffective for failing to object to admission of alleged lay opinion testimony by police investigator Sheller concerning the direction of the bullet through Lopez's car. No relief is due.

At trial, investigator Sheller testified that he previously responded to dozens of crime scenes involving shootings, and he was familiar with observing evidence of the entrance and exit of a gunshot on people, houses, windows, cars and wooden structures. When asked about the characteristics of such evidence, Sheller stated that for entrance markings, the area around the bullet hole will be pushed in, and for exit markings, the area around the bullet hole will mushroom outward. Sheller then examined photographs of the bullet holes on exterior of the door and the inside speaker of Lopez's car,

concluding that the bullet was fired from outside the car and entered through the door and speaker into the car. Trial counsel objected to this testimony as an improper expert opinion, but the objection was overruled.

Our appellate courts have long recognized the ability of lay witnesses to render opinions if the opinions are rationally based upon the witness's perception. *See* Pa.R.E. 701(a). Arguably, testimony that bullet entry holes are pushed in and bullet exit holes are pushed out requires expert testimony. We need not resolve whether the testimony qualified as permissible lay opinion testimony, or as testimony requiring an expert, since Appellant still cannot prove prejudice. Appellant told police that he crouched down in front near his sister's house, and he took one shot at Lopez's vehicle with an AK-47 as it passed by. Thus, by his own admission, the bullet was fired from outside the car and entered through the door and speaker into the car. Two additional videos of the shooting confirm the same point. They showed Appellant retrieving a firearm and hiding between two vehicles in the 500 block of Locust Street as Lopez's vehicle approached Appellant's location. As Lopez drove by Appellant, a loud bang can be heard on one of the videos. Exclusion of Sheller's testimony on the same subject would not have altered the outcome of trial. Accordingly, the PCRA court properly held that Appellant could not establish that appellate counsel was ineffective for failing to litigate this issue on direct appeal.

Lastly, Appellant argues that trial counsel was ineffective for failing to investigate and present Lopez's cell phone records at trial, which Appellant alleges would have impeached Lopez's testimony regarding his location and activities earlier on the day of the shooting. Once again, Appellant fails to demonstrate that this information would have altered the outcome of the trial. Even if Lopez's cell phone records placed him at or around the scene of the shooting earlier in the day, cell phone records alone do not indicate that any confrontation occurred which would justify the use of deadly force on an unarmed victim. Regardless of Lopez's activities earlier in the day, the record is clear that Appellant laid in wait with an AK-47 until Lopez passed by in his car so he could fire at the car. Notably, Appellant admitted shooting at Lopez, and the shooting was captured on several neighboring surveillance systems, so any impeachment value of cell phone records would have been minimal. Accordingly, the PCRA court properly held that trial counsel was not ineffective for failing to investigate and present Lopez's cell phone records.

For these reasons, we affirm the order denying PCRA relief to Appellant.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/18/2026